UNITED STATES v. TENNESSEE & C. R. CO. et al.

(Circuit Court, N. D. Alabama, S. D.   December 18, 1895.)

**1. PUBLIC LANDS—RAILROAD GRANT—FORFEITURE.**
The condition in Act June 3, 1856, granting public lands to the state of Alabama to aid in the construction of certain railroads, that, if any one of said roads is not completed within 10 years, no further sale shall be made, and the lands unsold shall revert to the United States, cannot be enforced except by congressional action.

**2. SAME.**
Nor, in the absence of such action, are sales and transfers made after the expiration of such 10 years invalid.

Suit by the United States against the Tennessee & Coosa Railroad Company, the Nashville & Chattanooga Railway Company, Hugh Carlisle, and others.

Emmet O'Neal, U. S. Atty., and Frank S. White, for the United States.

Goodhue & Sybert and Oscar Hundley, for defendant.

BRUCE, District Judge. The bill in this case was filed October 31, 1891, and seeks a decree of forfeiture of the lands described in the bill. It brings up for consideration the act of congress granting lands to the state of Alabama to aid in the construction of a railroad from the Tennessee river, at or near Guntersville Landing, to Gadsden, on the Coosa river, which act was passed and approved June 3, 1856. The state of Alabama accepted the trust created by the act, and granted the lands to the Tennessee & Coosa River Railroad Company, by act of the legislature. Sess. Laws 1859-60. The route of the road was definitely fixed, and map of the lands was filed in land office at Washington, and certified lists of the lands were approved by the secretary of the interior, and delivered to the state. The Tennessee & Coosa Railroad Company sold portions of the lands to various purchasers, some of whom are made parties to the bill, but the larger part of the lands were sold to Hugh Carlisle, and he succeeded to the right of the company for the unpaid purchase money due and unpaid upon the portions of the lands previously sold. The Tennessee & Coosa River Railroad Company contracted with Hugh Carlisle for the construction of the road, and deeds of lands were made by the railroad company to Hugh Carlisle in the year 1887, for the consideration stated in the deeds, the same being, as claimed, for labor done and expenditures for the building and construction of the railroad.

The bill charges fraud on the part of Carlisle; that he did not pay for the lands; that he is not a bona fide purchaser; and charges waste and spoliation of the lands, and that Carlisle is insolvent. The prayer of the bill is that the selection made for the railroad company, as well as the approvals thereof, be set aside; that any and all certificates or other evidence of title issued to said Tennessee & Coosa Railroad Company, or purporting to convey the said lands, or any part thereof, shall be delivered by such of the defendants as may

be found to have them in possession, to the clerk of this court, to be by him duly canceled; and that all the rights, title, and interest, of every kind and description, of the said defendants, in and to any of the lands and property described in this bill, shall be divested out of them, and declared to be vested in the United States of America; and that the conveyances hereinabove set forth as Exhibits D and E shall be set aside, vacated, and annulled, and the said Hugh Carlisle shall be directed by the decree of this honorable court to deliver the originals thereof within a time to be fixed by the said decree to the clerk of this court; and that the same shall be duly canceled on the records of the several counties wherein the same have been recorded, —with prayer for general relief.

The answer of the defendant the Tennessee & Coosa Railroad Company contains a full and specific denial of the charges of fraud in the bill, and, among other things, says "that said conveyances were made and the lands were sold for the purpose of aiding in the construction of said railroad, and that the entire consideration recited to have been paid for said lands was used in the construction of said railroad." Hugh Carlisle's answer to the bill is quite full and specific, and it is deemed unnecessary to refer more at length to his answer or the other answers of the respondents which are filed in the cause.

The main question arises under the provisions of the granting act of congress of June 3, 1856, and also what is known as the "Forfeiture Act," of the 29th day of September, 1890. It is not questioned that on and before that date, September 29, 1890, $^{10}/_{22}$ miles of the railroad, from Attalla northwardly to Littleton, had been constructed, and were at that time in operation.

The first section of the forfeiture act provides:

"That there is hereby forfeited to the United States, and the United States hereby resumes title thereto, all lands heretofore granted to any state or any corporation, to aid in the construction of a railroad opposite to, and co-terminous with the portion of any such railroad not now completed and in operation, for the construction or benefit of which such lands were granted, and all such lands, are declared to be a part of the public domain. * * *"

A forfeiture act must be construed with some strictness, and, by the very terms of this act, the railroad having been completed and in operation opposite to and coterminous with the lands in question, other than those in the first 120 sections are not within the terms of the act. It would almost seem as if they were purposely excluded from the terms of the act, and the argument is not really insisted on upon this point, but upon the construction of the fourth section of the act, granting public lands in alternate sections to the state of Alabama, to aid in the construction of certain railroads in said state, June 3, 1856.

That section is in these words:

"That a quantity of land not exceeding one hundred and twenty sections for each of said roads, and included within a continuous length of twenty miles of each of said roads, may be sold, and when the governor of said state shall certify to the secretary of the interior, that any continuous miles of any of said railroad, is completed, then another quantity of land hereby

granted, not to exceed one hundred and twenty sections for each of said roads, having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles of each of such roads, may be sold, and so from time to time, until said roads are completed, and if any of said road is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States."

This section of the granting act, and other acts of congress using the same words, have been frequently before the courts, and the supreme court has held in many cases that these words are grants in præsenti, and that the concluding clause of the section is a condition subsequent, which, if not enforced, the power to sell continues as before its breach, "limited only by the object of the grant, and in the manner prescribed in the act." Schulenberg v. Harriman, 21 Wall. 44; Railroad Land Co. v. Courtright, Id. 310.

It is contended, however, that because the lands were sold and transferred after the first 10 years had expired, from the date of the grant, June 3, 1856, and because the conveyance of the lands to Hugh Carlisle was made long after the 10-year period had expired, and the construction of the railroad was not completed, then the sales of the lands made after that time were void, under the terms of the law. This view of the law is not borne out by the cases cited, but the contrary.

In Schulenberg v. Harriman, cited supra, it is said, at page 62 of the opinion:

"The provision in the act of congress of 1856 that all lands remaining unsold after ten years shall revert to the United States if the road be not completed is no more than a provision that the grant shall be void if a condition subsequent be not performed [citing authorities]."

The opinion goes on (page 63):

"If the condition be not enforced, the power to sell continues as before its breach, limited only by the object of the grant, and the manner of the sale prescribed in the act. And it is settled law that no one can take advantage of the nonperformance of the condition subsequent annexed to an estate in fee but the grantor or his heirs, or the successors of the grantor, if the grant proceed from an artificial person; and, if they do not see fit to assert their right to enforce a forfeiture upon that ground, the title remains unimpaired in the grantee. * * * And the same doctrine obtains when the grants upon condition proceed from the government. No individual can assail the title it has conveyed, on the ground that grantee has failed to perform the condition annexed."

If the government of the United States, through its legislative body, takes no action to enforce the condition in the granting act to these lands, then by what right or authority can this suit be maintained? If it be correct that the lands in question are not within the terms of the forfeiture act, then how is it shown that it ever was the purpose of congress to insist on any forfeiture contained in any provision of the act? On the contrary, does it not show that no such purpose was ever entertained, because never put into execution by any legislative act? It may be, and indeed the language used in the forfeiture act cited supra indicates, that the lands in question may have been purposely excluded from the terms of that act, and who shall say that the congress did not find ample reason why the construction of the railroad had been so long delayed, and

why the forfeiture should not apply to it? Congress may have been influenced by the condition of the country for a portion of the time between the passage of the granting act and the final completion of the road. The intervention of the recent war may have had an influence upon this legislation; but, whatever it may have been,— and the motive which influenced congress is not open to question here,—it is sufficient to say that, in the absence of congressional action as to the grant of these lands, there are no proper grounds upon which this bill can be maintained. It is clear implication from the action of congress in the forfeiture act, September 29, 1890, that the congress did not intend to insist on any condition subsequent which existed in the granting act.

It is to be noted in this connection that, at the date of the passage of the forfeiture act, the said railroad, as contemplated in the granting act from Guntersville, on the Tennessee river, to Gadsden, on the Coosa, was in process of construction, nearing completion, and was in fact completed and in actual operation before this bill was filed.

As to the charges of fraud in the bill, they are not sustained by the proof; at least by such measure of proof as is required in a case like this. And it is questionable how far the account and settlements between Carlisle and the railroad company are open for consideration here. The company obtained its title from the state of Alabama, acting under a statute of the state, accepting the grant of land and the trust created by the act; and in the case of U. S. v. Des Moines Nav. & Ry. Co., 142 U. S. 510, 12 Sup. Ct. 308, it is held that the knowledge and good faith of a legislature are not open to question. But the presumption is conclusive that it acted with full knowledge and in good faith.

The result of these views is that the lands embraced in the first 120 sections of the granting act the railroad company was authorized to sell in advance of the construction of the road, and that the parties to whom such sale was made took good title, and there can be no recovery or restitution of any of these lands to the public domain in this case; (2) that the lands described in Exhibit D to original bill are lands which lie opposite to that part of the road which was completed and in operation on the 29th day of September, 1890, and are not within the lands covered by act of September 29, 1890.