# UNITED STATES *v.* NORTHERN PACIFIC RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 408.   Argued January 26, 29, 1900. — Decided April 16, 1900.

The important questions of fact and law are substantially the same in this case and in *Doherty* v. *Northern Pacific Railway Company*, *ante*, 421, and that case is followed in this in regard to the questions common to the two cases.

The obvious purpose of this suit was, to have the question of the proper terminus of the company's road determined; and if that terminus was found to be at Ashland, then the complainant would not be entitled to any relief.

Under the act of July 2, 1864, non-completion of the railroad within the time limited did not operate as a forfeiture.

As the bill, in this case, does not allege that it is brought under authority of Congress, for the purpose of enforcing a forfeiture, and does not allege any other legislative act, looking to such an intention, this suit must be regarded as only intended to have the point of the eastern terminus judicially ascertained.

As the evidence and conceded facts failed to show any mistake, fraud or rror, in fact or in law, in the action of the land department in accepting the location of the eastern terminus made by the company, and in issuing the patent in question, the bill was properly dismissed.

IN July, 1898, the United States, by the Attorney General, filed in the Circuit Court of the United States for the District of Minnesota a bill of complaint against the Northern Pacific Railroad Company and others. The object of the suit was to procure the cancellation and annulment of a certain patent granted to the Northern ·Pacific Railroad Company by the United States on April 22, 1895, for a tract of land lying and being more than ten miles east of .Duluth, in the State of Minnesota, and which patent was alleged by the bill to have been inadvertently and mistakenly issued. The case was disposed of on bill, answer and a stipulation of facts. The Circuit Court dismissed the case for want of equity, and the cause was taken on appeal to the Circuit Court of Appeals for the Eighth Circuit, where the decree of the Circuit Court was, on July 10, 1899, affirmed. An appeal was thereupon allowed to this court.

This cause was heard in this court in connection with that of *Andrew Doherty* v. *The Northern Pacific Railway Company, ante,* 421. That case came here on a writ of error to the Supreme Court of the State of Wisconsin.· The present one is on appeal from the Circuit Court of Appeals for the Eighth Circuit.

*Mr. C. W. Russell* for the United States.

*Mr. James B. Kerr* and *Mr. C. W. Bunn* for the Northern Pacific Railway Company.

*Mr. M. S. Bright* for Doherty submitted on his brief.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The important questions of fact and of law were substantially the same in the two cases, and so were the reasoning and conclusions of the respective courts below. In a judgment just entered by this court, the judgment of the Supreme Court of Wisconsin was affirmed, for reasons given in the opinion, a reference to which is deemed to be a sufficient disposition of the questions common to the two cases.

But in the present case there has been raised and argued a proposition not considered in the Supreme Court of Wisconsin, and which is entitled to our attention. Briefly stated, it is that, even if it be conceded that the eastern terminus of the Northern Pacific Railroad Company was lawfully fixed at Ashland, Wisconsin, yet that the land grant of the company had lapsed before any map of the definite location of the railroad east of Duluth, Minnesota, had been filed in the land department; that the company could not lawfully extend the construction of its railroad, so as to entitle it to land under its land grant, after the time limited by act of Congress for the completion of the railroad had fully expired; and that, consequently, the patent to the land described in the bill, being land east of Duluth, was granted mistakenly and improperly.

This contention is based on the language of section 8 of the incorporating act, which is as follows : "That each and every grant, right and privilege herein are so made and given to, and accepted by, said Northern Pacific Railroad Company, upon and subject to the following conditions, namely : That the said company shall commence work upon said road within two years from the approval of this act by the President, and shall complete not less than fifty miles per year after the second year, and shall construct, equip, furnish and complete the whole road by the fourth day of July, Anno Domini eighteen hundred and seventy-six." The time of completion was subsequently extended to July 4, 1880. 14 Stat. 355; 15 Stat. 255.

It is always safe, in approaching a question of this kind, to have regard to the pleadings in the case. Otherwise there is danger that the court and counsel may be drawn into discussions outside of the case actually presented.

On inspection, it appears that the case made by the bill is, that the eastern terminus of the Northern Pacific Railroad became, was and now is at the city of Duluth, State of Minnesota; that the land in question being part and parcel of the public lands of the United States, is more than ten miles east of the said eastern terminus, and not, therefore, within the limits of the grant to said company; that the patent granted to the said company on April 22, 1895, was issued " through

mistake and inadvertence, and under the erroneous impression and mistaken belief that said tract of land was within the limits of the said grant to the Northern Pacific Railroad Company;" and the relief prayed for is that said tract of land be restored to the complainant; that the defendant be required to reconvey all of said tract of land; and that said patent issued by the ministerial officers of the government, so far as the tract of land described in the bill is concerned, be cancelled and annulled; and for such other and further relief as may be just and equitable.

It is true that, in the narrative part of the bill, the eighth section of the incorporating act is quoted, and also there is set forth the several transactions whereby it is alleged Duluth became established as the eastern terminus of the company's road, but there is no intimation that it was the purpose of the bill to have a forfeiture of the company's rights and property judicially ascertained and declared. Indeed, the obvious purpose of the suit was to have the question of the proper terminus of the company's road determined; and it seems a fair deduction from the averments and prayers of the bill that, if that terminus was found to be at Ashland, then the complainant would not be entitled to any relief.

It is argued on behalf of the Government that, even if the bill did not point to a forfeiture as part of the proof that the land had been mistakenly patented, yet that as the defendants, in their answer, had set up, as part of their defence, that the road had been "duly," and "in all respects," constructed in accordance with the law, thereby entitling them to the land in dispute, the issue was thereby widened so as to include the question of forfeiture. We think the Court of Appeals properly disposed of this argument when it said: "This is nothing but a suit to avoid a patent to a single tract of land on the sole ground that the land department erroneously found the eastern terminus of the road to be at Ashland when it was at Duluth. No forfeiture of any of the rights and privileges of the company on account of the delay in the construction of its railroad has been prayed, no issue of forfeiture has been tendered or made by the pleadings, and that question is not here for consideration. It is a

general rule that questions that are not within the issues presented by the pleadings may not be determined by the courts, much less may so important a question as the forfeiture of the rights of a corporation to thousands of miles of railroad and thousands of acres of land under a Congressional grant. Courts have no jurisdiction to consider or determine the question of the forfeiture of a railroad grant until it is raised by direct allegations in a suit instituted by lawful authority for the express purpose of presenting it."

Again, it is contended that when a statutory grant contains on the face of the law a provision that each and every grant, right and privilege are upon condition that the road shall be completed within a certain time, and that time expires without performance of the condition, all future proceedings of the company, even if acquiesced in and approved by executive officers of the Government, in disregard of the forfeiture, are unauthorized, *ultra vires* and forbidden.

In other words, if we understand the position, it is claimed that under section 8 of the act of July 2, 1864, non-completion of the railroad within the time limited of itself operates as a forfeiture; the grant immediately reverts to the Government; and courts must so hold on the simple statement of the fact of non-compliance within the limit. We do not understand this to be a correct statement of the law. In *Schulenberg* v. *Harriman*, 21 Wall. 44, this court was called upon to consider the legal import of such a provision in the act of Congress of June 3, 1856, granting public lands to the State of Wisconsin to aid in the construction of railroads in said State. After providing that the lands should be sold, from time to time, as the construction of the railroad progressed, until the road was completed, it was enacted that " if said road is not completed within ten years no further sales shall be made, and the lands unsold shall revert to the United States."

No part of the road having been built at the expiration of the period limited in the grant, it was claimed that the lands reverted to the United States. It was held by the Circuit Court of the United States for the District of Minnesota that such lands did not *ipso facto* revert to the United States by

mere failure to build the road within the period prescribed by Congress, and that to effect a forfeiture some act on the part of the government evincing an intention to take advantage of such failure was essential; and, on error, that ruling was affirmed by this court, and the following statement of the law was made by Mr. Justice Field in giving the opinion of the court:

" In what manner the reserved right of the grantor for breach of the condition must be asserted so as to restore the estate, depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture, and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make an entry in person, and, therefore, an office found was necessary to determine the estate; but, as said by this court in a late case, (*United States* v. *Repentigny*, 5 Wall. 286,) ' the mode of asserting or of resuming the forfeited grant is subject to the legislative authority of the Government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings.'

" In the present case no action has been taken either by legislative or judicial proceedings to enforce a forfeiture of the estate granted by the act of Congress. The title remains, therefore, in the State as completely as it existed on the day when the title by location of the route of the railroad acquired precision and became attached to the adjoining alternate sections."

In July, 1866, Congress granted unto the California and Oregon Railroad Company a right of way over the public lands. In a subsequent suit between the railroad company and one Bybee, a holder of a mining claim, it was claimed that the railroad company had forfeited and lost its right under the

grant by its failure to complete its road within the time limited in the act; that such failure operated *ipso facto* as a termination of all right to acquire any further interest in any lands not then patented. But it was held by this court, in the words of Mr. Justice Brown: "That in all cases in which the question has been passed upon by this court, the failure to complete the road within the time limited is treated as a condition subsequent, not operating *ipso facto* as a revocation of the grant, but as authorizing the Government itself to take advantage of it, and forfeit the grant by judicial proceedings, or by an act of Congress, resuming title to the land." *Schulenberg* v. *Harriman*, 21 Wall. 44; *Van Wyck* v. *Knevals*, 106 U. S. 360, are then cited, and likewise *St. Louis, &c., Railroad Co.* v. *McGee*, 115 U. S. 743, where it was said by Chief Justice Waite to have been often decided "that lands granted by Congress to aid in the construction of railroads do not revert after condition broken until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose, or through some legislative action legally equivalent to judgment of office found at common law." "Legislation to be sufficient must manifest an intention by Congress to reassert title and to resume possession. As it is to take the place of a suit by the United States to enforce a forfeiture, and judgment therein establishing the right, it should be direct, positive and free from all doubt or ambiguity."

As the bill in this case does not allege that it is brought under authority of Congress for the purpose of enforcing a forfeiture, and does not allege any other legislative act whatever looking to such an intention, it is plain, under the authorities cited, that this suit must be regarded as only intended to have the point of the eastern terminus judicially ascertained. This being so, and that terminus having been found to be at Ashland, it follows that the courts below committed no error in dismissing the bill of complaint.

This view of the case renders it unnecessary for us to consider whether the United States could be estopped by the acts of the executive department, in recognizing the rights of the railroad company as continuing in full force after the expira-

tion of the time named in the statute ; or to consider whether the ordinary doctrines of courts of equity, which relieve a contracting party from forfeiture by reason of a failure to complete the contract within a time fixed, when the work is subsequently completed and accepted, would apply to a case like the present. Undoubtedly there would seem to be room for a fair presumption that Congress was aware of the action of the President and of the functionaries of the land department in the particulars before mentioned, and approved of the same. It is not, as put by the counsel of the Government in his able brief, the case of a waiver presumed from mere non-action, but from non-action in the special circumstances disclosed.

As the evidence and conceded facts failed to show any mistake, fraud or error, in fact or in law, in the action of the land department in accepting the location of the eastern terminus made by the company, and in issuing the patent in question, the bill was properly dismissed, and the decree of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice McKENNA did not take part in the decision of the case.