## UNITED STATES v. WHITNEY et al.

(Circuit Court, D. Idaho, Central Division. February 7, 1910.)

1. WATERS AND WATER COURSES (§ 32*)—RESERVOIR SITES—FORFEITURE—STATUTES—CONDITIONS SUBSEQUENT.

Act Cong. March 3, 1891, c. 561, 26 Stat. 1095 (U. S. Comp. St. 1901, p. 1571), authorizing the grant of public land for reservoir sites, section 20 provides that, if any section of the canal shall not be completed within five years after location, the rights granted shall be forfeited as to any uncompleted section of the canal, ditch or reservoir. *Held* that, such requirement being in the nature of a condition subsequent, a failure to comply did not ipso facto operate to divest the grantee of title and revest it in the government, but that, to be effectual, the default must be followed by a declaration of forfeiture by some competent authority, and, the grant being of a public nature, the declaration can only be by act of Congress or in an appropriate judicial proceeding.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 21, 22; Dec. Dig. § 32.*]

2. WATERS AND WATER COURSES (§ 32*)—IRRIGATION RIGHTS—FORFEITURE—DECLARATION.

Where a grantee of public land for an irrigation reservoir site failed to complete his improvement for five years, as required by Act Cong. March 3, 1891, c. 561, 26 Stat. 1095 (U. S. Comp. St. 1901, p. 1535), so that the same was subject to forfeiture under section 20, it was not necessary to the enforcement of a forfeiture that it should be first declared by act of Congress, but a forfeiture could be enforced by the executive in judicial proceedings.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 21, 22; Dec. Dig. § 32.*]

Suit by the United States of America against Mamie L. Whitney, individually and as executrix of the estate of W. Grant Whitney, deceased. Decree for complainant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

176 F.—38

C. H. Lingenfelter, U. S. Atty., and B. E. Stoutemyer, for the United States.

T. D. Cahalan, Chas. H. Carey, James B. Kerr, and 'Ernest W. Hardy, for defendants.

DIETRICH, District Judge. The suit is brought to enforce a forfeiture of the title to a reservoir site located on public land on account of an alleged breach by the grantee of a condition subsequent embraced in the original grant. From the bill and answer, upon which the cause is submitted, it appears that W. Grant Whitney, to all of whose property interests the defendant has succeeded, in the year 1900 acquired such rights in, and title to, a certain reservoir site in the state of Idaho as accrue to a qualified person who fully complies with all the terms and conditions of sections 18 to 21, inclusive, of an act of Congress entitled "An act to repeal timber culture law, and for other purposes," approved March 3, 1891 (Act March 3, 1891, c. 561, 26 Stat. 1095, 1101, 1102 [U. S. Comp. St. 1901, pp. 1535, 1570, 1571]), and an act amendatory thereof, approved May 11, 1898 (Act May 11, 1898, c. 292, § 2, 30 Stat. 404 [U. S. Comp. St. 1901, p. 1575]), and with the rules and regulations of the Secretary of the Interior, adopted in pursuance thereof, excepting only the requirement that actual construction of the contemplated works be completed within the prescribed period of five years. Whitney located the site within 12 months prior to December 13, 1899, upon which date he properly filed maps thereof in the local land office and with the Secretary of the Interior, who upon October 18, 1900, duly approved the same and indorsed his approval thereon. Some preparation—the nature of which is not clearly disclosed—was made to finance and carry out the project, but no actual construction work was done upon the ground, which still remains in its natural condition. The only excuses offered for the default in completing the work within the time prescribed by law are that the grantee was greatly harrassed by litigation involving the title to certain privately-owned lands embraced within the site, and, further, that some of complainant's agents circulated reports tending to cast a cloud upon the validity of his claims, and calling into question his right to hold the site for reservoir purposes. These excuses are not seriously urged by the defendant, and are dismissed as not presenting any substantial defense.

In its general features the act of March 3, 1891, is very similar to the railroad right of way act (Act March 3, 1875, c. 152, 18 Stat. 482 [U. S. Comp. St. 1901, p. 1568]). The language of section 18 is:

"That the right of way through the public lands and reservations of the United States is hereby granted * * * to the extent," etc.

Section 19 provides that, upon the approval of the map by the Secretary of the Interior, such approval shall be noted upon the plats in the local land office, "and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way." It is accordingly held that as in the case of a railroad right of way the grant is in præsenti, and that title to the land shown upon the applicant's maps vests in him upon the approval thereof by the Secretary of the Interior. Noble v. Union River Logging Co., 147 U. S.

171, 13 Sup. Ct. 271, 37 L. Ed. 123; Min., St. P. & Sault Ste. Marie Railroad Co. v. Doughty, 208 U. S. 251, 28 Sup. Ct. 291, 52 L. Ed. 474. Conceding that Whitney thus became vested with the title to the reservoir site, complainant contends for a forfeiture of all rights so acquired, under and by reason of section 20 of the act, which, among other things, provides:

"That if any section of said canal or ditch shall not be completed within five years after the location of said section the rights herein granted shall be forfeited as to any uncompleted section of said canal, ditch, or reservoir, to the extent that the same is not completed at the date of the forfeiture."

This requirement being in the nature of a condition subsequent, the rule undoubtedly is that failure to comply therewith does not operate ipso facto to divest the grantee of the title and reinvest the grantor therewith, but that to be effectual, the default must be followed with a declaration of forfeiture by some competent authority, and, the grant here being of a public nature, such declaration can be made only by an act of Congress, or in an appropriate judicial proceeding. United States v. De Repentigny, 5 Wall. 211, 267–268, 18 L. Ed. 627; Schulenberg v. Harriman, 21 Wall. 44, 62–64, 22 L. Ed. 551; Farnsworth v. Minnesota, etc., Ry., 92 U. S. 49, 66–68, 23 L. Ed. 530; McMicken v. United States, 97 U. S. 204, 218, 24 L. Ed. 947; Bybee v. Oregon, etc., Ry., 139 U. S. 663, 674–677, 11 Sup. Ct. 641, 35 L. Ed. 305; St. Louis, etc., Ry. v. McGee, 115 U. S. 469, 472–475, 6 Sup. Ct. 123, 29 L. Ed. 446; Railroad Co. v. Mingus, 165 U. S. 413, 430–434, 17 Sup. Ct. 348, 41 L. Ed. 770.

In Schulenberg v. Harriman, supra, the rule is stated to be as follows:

"In what manner the reserved right of the grantor for breach of the condition must be asserted so as to restore the estate depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of the condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make an entry in person, and therefore an office found was necessary to determine the estate, but, as said by this court in a late case, 'the mode of asserting or of resuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings.' In the present case no action has been taken either by legislation or judicial proceedings to enforce a forfeiture of the estate granted by the acts of 1856 and 1864. The title remains, therefore, in the state as completely as if it existed on the day when the title by location of the route of the railroad acquired precision and became attached to the adjoining alternate sections."

In the present case, there has been no congressional action looking to an enforcement of the forfeiture, and the only expression of the legislative will is to be found in the provision already quoted from the original grant. The precise question submitted for decision therefore is: Was it competent for the Attorney General to institute this proceeding, and is this court authorized to enforce the forfeiture by finding the breach and decreeing a restoration of the estate? Maintain-

ing that the executive department is powerless to institute such a proceeding until Congress shall have expressly conferred special authority therefor, the defendant attaches great significance to the fact that in referring to judicial declarations of forfeiture the Supreme Court in the cases above cited almost invariably speaks of such actions not merely as judicial proceedings, but as judicial proceedings authorized by law, or instituted under authority of law.

It is, however, conceded that in none of these cases was the present question involved, and for support of her position defendant mainly relies upon United States v. Tenn. & Coosa Ry. Co. (C. C.) 71 Fed. 71, and United States v. N. P. R. R. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836. In the former case the question arose under the provisions of a railroad land grant act and a subsequent general act declaring a forfeiture of lands theretofore granted in aid of railways where certain conditions had not been complied with. By the suit the United States sought to enforce a forfeiture of lands granted to the defendant, reliance, however, being placed not upon a condition specified in the general forfeiture act, but upon another condition subsequent prescribed by the granting act, and concerning which the general forfeiture act was silent. In the course of the opinion (by Bruce, District Judge) it is said:

"If it be correct that the lands in question are not within the terms of the forfeiture act, then how is it shown that it ever was the purpose of Congress to insist upon any forfeiture contained in any provision of the act? On the contrary, does it not show that no such purpose was ever entertained because never put into execution by the legislative act? It may be, and, indeed, the language used in the forfeiture act (cited supra) indicates that the lands in question may have been properly excluded from the terms of that act. * * * It is a clear implication from the action of Congress in the forfeiture act, September 29, 1890 [chapter 1040, 26 Stat. 496 (U. S. Comp. St. 1901, p. 1598)], that the Congress did not intend to insist upon any condition subsequent which existed in the granting act."

It is doubtless true that the method of declaring a forfeiture is subject to legislative control, and if, as appears to be the case, the court construed the forfeiture act, or any other congressional act, as implying an unwillingness on the part of the Congress to have the forfeiture enforced, it was not only the right, but the duty, of the court to give effect to such implication, and thus execute the legislative will. Certain expressions in United States v. N. P. R. R. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836, appear to be more pointedly favorable to the defendant's contention. The particular sentence relied upon is as follows:

"As the bill in this case does not allege that it is brought under authority of Congress for the purpose of enforcing a forfeiture, and does not allege any other legislative act whatever looking to such an intention, it is plain, under the authorities cited, that this suit must be regarded as only intended to have the point of the eastern terminus judicially ascertained."

It must be borne in mind, however, that this language was used in stating the conclusion of the court upon the question whether or not the position assumed by the government at the argument was within the pleadings. After stating complainant's proposition, the court says:

"It is always safe, in approaching a question of this kind, to have regard to the pleadings in the case. Otherwise there is danger that the court and counsel may be drawn into discussions outside of the case actually presented."

It then proceeds to analyze the bill, and finds that while in the narrative part there is quoted a section of the granting act, prescribing certain conditions subsequent, "the obvious purpose of the suit was to have the question of the proper terminus of the company's road determined," and that "there is no intimation that it was the purpose of the bill to have a forfeiture of the company's rights and property, judicially ascertained and declared." And thereupon, after a somewhat extended reference to previous cases decided by the court, its general conclusion is stated in the language here relied upon by the defendant and hereinbefore quoted. It will thus be seen that primarily the court was considering the question whether or not the relief contended for could properly be held to be within the scope of the pleadings. It may be added that when the case was in the Circuit Court of Appeals the same question was raised, and the conclusion was there also reached that the relief was not within the allegations of the bill.

Moreover, it is to be noted that the act there under consideration, differing from the one here involved, contained no language expressly declaring a forfeiture. That the distinction between the two acts is not to be deemed to be one of form only is made plain by the following extract from the opinion of the Circuit Court of Appeals:

"Moreover, it is extremely doubtful, in view of the provisions of section 9 of the charter, whether or not any court would have jurisdiction to hear an application for or to declare a forfeiture in the absence of an act of Congress directing such an application. That section provides that, if the company makes any breach of the conditions of the act, and allows the same to continue for upward of one year, 'then in such case at any time hereafter the United States, by its Congress, may do any and all acts and things which may be needful and necessary to insure a speedy completion of the said road.' Courts will hesitate long, we apprehend, to declare a forfeiture of the rights under this charter in the absence of any action by Congress. However this may be, no act of forfeiture has ever been passed, no decree of forfeiture has ever been rendered." 95 Fed. 879, 37 C. C. A. 405.

The defendant further sees great significance in the fact that in the history of public land grants, both for rights of way and in aid of railways and other works, the reported cases are extremely rare where a judicial declaration of forfeiture has been sought; whereas, there have been numerous congressional acts forfeiting such grants either in whole or in part. But this fact does not necessarily imply either a legislative assumption or an administrative concession of the correctness of defendant's position. Obviously in cases where grants of the same character have been many and extensive, and where there has been default in complying with the conditions by numerous grantees, a legislative declaration of forfeiture is likely to be not only much more summary, but also much less expensive, than an enforcement of the forfeiture by resort to judicial proceedings. Moreover, the mere inaction of the executive does not necessarily imply an admission of want of authority. The facts constituting the forfeiture may not have come to the knowledge of the executive officers, or there may

have been no urgent need for declaring a forfeiture. Here the government has need for the land embraced within the reservoir site for use in connection with a reclamation project, and, the default of the grantee having thereupon and for that reason been brought to the attention of the department of justice, it has instituted this action for the purpose of having the forfeiture enforced. Had it not been for this need arising out of one of the new activities of the government, the grantee's default might have passed unnoticed or uncomplained of; but the inaction of the department of justice under such circumstances would not imply incapacity to act.

·The defendant has especially urged for consideration Senate Resolution No. 48, approved April 30, 1908 (35 Stat. 571), which, together with the circumstances surrounding its adoption, it is contended, implies a legislative assertion and an administrative concession of the claim that the executive is without authority to proceed until Congress shall have first expressly and specially conferred such authority; but the history of this resolution does not warrant such a conclusion. From the proceedings it is clear that there existed in the department of justice a difference of opinion as to the right to proceed without further legislative authority, and that the question was not entirely free from doubt. Apparently the attitude of the Attorney General was that, while he was personally of the opinion that he already had the right to proceed, there was room for question, and before entering upon expensive litigation, involving vast property interests, it was thought discreet to take the precaution of procuring express authority, and thus effectually and finally setting all doubts at rest. It was in this spirit, as I read the record, that the resolution was asked and granted. Moreover, the acts to which the resolution was directed were of a special nature, and were much less definite in their terms than the one now under consideration. It is possible that a distinction should be drawn between a specific grant by special act to a designated person for a prescribed purpose, and grants effected by compliance with the provisions of general and permanent law. A grant being by special act, it may be argued that authority for its revocation should also be conferred by special act. But, however that may be, what substantial reason can be adduced for holding that the resolution referred to conferred greater power upon the Attorney General than is possessed by the executive department under the act of March 3, 1891, and the Constitution and general laws? That resolution does not purport to enlarge the jurisdiction of the courts, or vest in them any additional or peculiar power, nor does it create or provide for any new or special proceeding. It simply authorizes and directs the Attorney General by appropriate actions in the courts to assert such rights as the United States has in certain vast tracts of lands included in the original grants. The act of March 3, 1891, is general and permanent in its character, and operates continuously to convey the title to public lands to all persons complying with its provisions. It cannot be doubted that the forfeiture clause equally with the granting clause is also in the nature of general law and of a permanent character, and that, being true, it is not clear why it should not be held to be ample warrant to the Attorney General to enter the courts and there seek

the enforcement of public rights and the restoration of the title to public property, thus "executing the law." By the Constitution it is made the duty of the chief executive to "take care that the laws be faithfully executed"; and, if certain rights are granted by general law, and by the same general law it is provided that such rights shall be forfeited on the breach of certain conditions, the breach existing, it is thought that the executive has the authority to institute proceedings in the courts to have such forfeiture judicially declared, and that suits brought for that purpose are judicial proceedings authorized by law.

It may be true, as suggested, that cases will arise where on account of extraordinary conditions or great misfortune, or unforeseen accidents, the grantee, after making large expenditures in construction work, will be unable to complete the project within the prescribed period, and that, under such circumstances, forfeiture would entail great hardship. Assuming, but not deciding, that in such case the courts would be powerless to give equitable relief, it is sufficient to say that the grantee is at liberty, either in anticipation of his default or subsequently, either before suit is brought or thereafter, to appeal to Congress for an extension of the time or for a modification of the grant, or for any other proper measure of relief.

Since maturing the foregoing views, there has come to my attention the opinion of the Supreme Court of the United States, filed December 13, 1909, in the case of the Rio Grande Dam & Irrigation Co. and others v. United States, 215 U. S. 266, 30 Sup. Ct. 97, 54 L. Ed. ——. The case was originally brought in one of the courts of New Mexico in 1897; the general object thereof being to obtain an injunction to prevent the Rio Grande Dam & Irrigation Company from maintaining a dam across and a reservoir near the Rio Grande river. Prior to this last decision, the case was twice before the Supreme Court, the last appeal resulting in a reversal, with directions "to grant leave to both sides to adduce further evidence." Thereafter, by leave of the trial court, the plaintiff filed a supplemental complaint, in which, after referring to the defendant's plea that it had acquired a right to construct the dam and reservoir by virtue of its compliance with the act of March 3, 1891 (the one here under consideration), it alleged facts showing the failure of defendant to complete its works within the prescribed period, and prayed for a decree of forfeiture in addition to the injunctive relief primarily sought in the original bill. The defendant failed to plead to the supplemental complaint within the time allowed by law, and, its default having been entered, the court found the allegations of the supplemental bill to be true, and, in harmony with the findings, adjudged "that the rights of the said defendants, or either of them, to so construct. and complete the said reservoir and said ditch, or any part thereof, under and by virtue of said act of Congress of March 3, 1891, be and the same are hereby declared to be forfeited"; and it was further decreed that the defendants be enjoined from constructing or attempting to construct any part of the reservoir. On appeal to the Supreme Court of the territory, the action of the trial court was sustained, and a similar judgment was there entered, from which an appeal was prosecuted to the

Supreme Court of the United States, where there was an affirmance. It is true that the question here considered does not appear to have been raised, and it is further true that the general object of the suit, and the only object of the suit as originally brought, was to obtain an injunction against the defendant, upon the ground that the construction of the reservoir and dam would interfere with the navigability of the Rio Grande river. But so far as appears from the record, while the injunctive relief originally prayed for was finally granted, it was granted, not upon the theory that the defendant was threatening to interfere with the navigability of the stream, but upon the ground alone that it had, by forfeiture, lost its right to construct the reservoir and dam. In other words, the filing of the supplemental complaint in effect initiated a proceeding for the enforcement of a forfeiture under the act of March 3, 1891, and the finding and decree of forfeiture became the only basis for the injunctive relief. While, as already stated, the objection here raised by the defendant does not appear to have been made, still, if defendant's theory be correct, the failure to interpose the objection would not constitute a waiver, for it relates either to the jurisdiction of the court or to the sufficiency of the facts stated in the bill to entitle the plaintiff to relief, and the court upon its own motion could, at any stage of the proceedings, have dismissed the supplemental bill. On the whole, while perhaps not conclusive, the case must, I think, be considered as strongly fortifying the position which the government here maintains.

In harmony with the views hereinbefore expressed, it is held that complainant is entitled to a decree.