UNITED STATES v. WASHINGTON IMPROVEMENT & DEVELOPMENT
CO. et al.

(Circuit Court, E. D. Washington. July 15, 1911.)

No. 1,552.

PUBLIC LANDS (§ 88*)—RAILROAD GRANT—FORFEITURE FOR BREACH OF CONDITION SUBSEQUENT—POWER TO DECLARE.

A court of equity has no inherent power to decree a forfeiture of a land grant made by Congress, and the United States cannot maintain a suit to recover land so granted for breach of a condition subsequent, in the absence of a declaration of forfeiture by Congress or of express authority from Congress for the institution of the suit.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 235, 266–269; Dec. Dig. § 88.*]

In Equity. Suit by the United States against the Washington Improvement & Development Company, the Washington & Great Northern Railway Company, and the Great Northern Railway Company. On demurrer to bill. Demurrer sustained.

Oscar Cain, U. S. Atty., E. C. Macdonald, Asst. U. S. Atty., and A. M. Craven, Sp. Asst. U. S. Atty.

F. V. Brown, L. F. Chester, and W. A. Monten, for defendants.

RUDKIN, District Judge. By Act Cong. June 4, 1898, c. 377, 30 Stat. 430, the United States granted to the Washington Improvement & Development Company and to its assigns a right of way for its railway, telegraph, and telephone lines through the Colville Indian reservation in the state of Washington, beginning at a point on the Columbia river near the mouth of the Sans Poil river, running thence in a northerly direction to the international boundary line between British Columbia and the state of Washington, together with certain incidental rights and privileges not material to our present inquiry. Section 3 of the act provided that the company should cause maps showing the route of its located lines through the reservation to be filed in the office of the Secretary of the Interior; that, when a map showing any portion of the railway company's located line was filed as therein provided, the company should commence grading such located line within six months thereafter, or such location should be void; and that such location should be approved by the Secretary of the Interior in sections of 25 miles before the construction of any such section should begin. Section 5 of the act provided that the rights therein granted should be forfeited by the company, unless at least 25 miles of the railroad should be constructed through the reservation within two years after the passage of the act; and by section 6 Congress reserved the right to alter, amend, or repeal the act in whole or in part.

It appears from the bill of complaint filed on behalf of the government that the defendant Washington Improvement & Development Company accepted the rights and privileges granted under the provisions of the act, and filed maps from time to time in the office of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Secretary of the Interior, showing the route of its located lines through the reservation, which maps were approved by the Secretary of the Interior on divers dates between June 23, 1899, and November 27, 1899; that the Washington Improvement & Development Company did not commence grading its located lines or any part thereof within six months after the filing of such maps, or at all; that it did not construct or cause to be constructed through the reservation any portion of its railroad within two years after the passage of the act, or at all, and that no part of the railroad has been constructed or is now under construction by the Washington Improvement & Development Company or its assigns; that on the 20th day of July, 1906, the Washington Improvement & Development Company assigned to the Washington & Great Northern Railway Company all rights and privileges granted or acquired under or by virtue of the act of Congress; that thereafter the Washington & Great Northern Railway Company made a like assignment to the Great Northern Railway Company; that neither the Washington & Great Northern Railway Company or the Great Northern Railway Company at any time located any portion of its railroad through the reservation, and that no portion of the railroad has been constructed through the reservation by either of said companies within two years after the passage of the granting act, or at all; that the United States elects to forfeit all rights and privileges granted under the act of Congress by reason of the failure on the part of the defendants to comply with the terms thereof, and the prayer of the bill is that the rights and privileges granted to the defendants and each of them be declared forfeited to the United States.

The defendants have interposed a demurrer to the bill on three grounds, but the second and third grounds of demurrer are mere amplifications of the first, which is as follows:

"That said proceeding is instituted, and said bill of complaint is filed, without any lawful authority therefor."

The question is thus presented whether the United States may maintain a suit in equity to forfeit a land grant such as this for breach of a condition subsequent, in the absence of a declaration of forfeiture by Congress, or express authority from Congress for the institution of such a proceeding. Of course, if a suit will lie under such circumstances, the Attorney General is the proper officer to institute it, for, as said by the court in United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747:

"If the United States in any particular case has a just cause for calling upon the judiciary of the country, in any of its courts, for relief by setting aside or annulling any of its contracts, its obligations, or its most solemn instruments, the question of the appeal to the judicial tribunals of the country must primarily be decided by the Attorney General of the United States. That such power should exist somewhere, and that the United States should not be more helpless in relieving itself from frauds, impostures, and deceptions than the private individual, is hardly open to argument. The Constitution itself declares that the judicial power shall extend to all cases to which the United States shall be a party, and that this means mainly where it is a party plaintiff is a necessary result of the well-established proposition that it cannot be sued in any court without its consent. There must, then, be an

officer or officers of the government to determine when the United States shall sue, to decide for what it shall sue, and to be responsible that such suits shall be brought in appropriate cases. The attorneys of the United States in every judicial district are officers of this character, and they are by statute under the immediate supervision and control of the Attorney General. How, then, can it be argued that, if the United States has been deceived, entrapped, or defrauded into the making under the forms of law of an instrument which injuriously affects its rights of property, or other rights, it cannot bring a suit to avoid the effect of such instrument thus fraudulently obtained, without a special act of· Congress in each case, or without some special authority applicable to this class of cases, while all other just grounds of suing in a court of justice concededly belong to the department of justice, and are in use every day?"

But the question still remains, Has a right of action accrued in favor of the government under the facts set forth in the bill? The opinions of the different Attorneys General, the declarations of the Supreme Court of the United States, the legislation of Congress, and the practice of all departments of the government through a long series of years convince me that no such right exists. By section 1 of Act Cong. May 26, 1824, c. 165, 4 Stat. 47, the United States granted to the state of Indiana a right of way for a canal "by which to connect the navigation of the rivers Wabash and Miami with Lake Erie."

Section 2 of the act provided:

"That, if the said state shall not survey, and direct by law said canal to be opened, and furnish the Commissioner of the General Land Office a map thereof, within three years from and after the date of this act; or, if the said canal be not completed, suitable for navigation, within twelve years thereafter; or, if said land, hereby granted, shall ever cease to be used and occupied for the purpose of constructing and keeping in. repair a canal, suitable for navigation; the reservation and grant aforesaid shall be void, and of noneffect."

By resolution dated March 19, 1878, the United States Senate directed the Attorney General to report whether the lands and rights granted by the United States to the state of Indiana under the above act had reverted to the United States, "and if so, what action upon the part of the United States, legislative or otherwise, is necessary and proper to enable it to obtain possession thereof." In response to this resolution Attorney General Devens, after discussing the nature of the grant, reported as follows:

"In response, therefore, to so much of the resolution as directs me to report 'what action on the part of the United States, legislative or otherwise, is necessary,' I have to state that I am of the opinion that Congress may provide by appropriate legislation for the appointment of a commissioner to · examine said canal and report whether in fact it has· been abandoned and ceased to be used as a public highway. If such commissioner is appointed, and his report shall show that the canal has been abandoned, Congress may then declare a forfeiture, *or direct that proper legal proceedings be instituted by the Attorney General in the courts to have a forfeiture declared.*" 16 Opinions of Attorneys General, p. 250.

By section 3 of Act Cong. July 27, 1866, c. 278, 14 Stat. 292, the United States granted to the Atlantic & Pacific Railroad Company certain lands in alternate odd sections on each side of its line of road to aid in its construction. Section 8 of the act provided:

"That each and every grant, right, and privilege herein are so made and given to and accepted by said Atlantic and Pacific Railroad Company, upon and subject to the following conditions, namely: That the said company shall commence the work on said road within two years from the approval of this act by the President, and shall complete not less than fifty miles per year after the second year, and shall construct, equip, furnish, and complete the main line of the whole road by the fourth day of July, Anno Domini, eighteen hundred and seventy-eight."

Application was made under section 4 of the act for the appointment of three commissioners to examine a section of 25 miles of road, constructed after the time limited by the act of Congress, and the matter was referred by the Secretary of the Interior to the Attorney General. After again discussing the nature of the grant, Attorney General Devens said:

"I am, therefore, of opinion that the grant to the railroad has not been forfeited by its failure to build its road within the time named in the act, *no action, by reason of its failure to perform the conditions, having been taken by authority of Congress.* It having, then, a present grant, even if it be treated as one liable to forfeiture, it has still a right to proceed to construct the road, and, until in some form advantage shall be taken of the breach of the conditions, *it would be the duty of the executive department to give it the benefit of the grant.*" 16 Opinions of Attorneys General, p. 572.

Schulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551, is cited in support of this conclusion.

By section 19 of Act Cong. March 3, 1877, c. 108, 19 Stat. 377, the United States granted to the county of Garland, in the state of Arkansas, a suitable tract of land not exceeding five acres "as a site for the public building of said county." The county authorities leased the land thus granted to private parties for a period of 99 years, and the Secretary of the Interior requested the Attorney General to institute legal proceedings "with a view to recover to the government the title and possession of the land, should the failure of the county authorities to carry out the purpose of Congress be regarded as operating to nullify the grant." In response to this request Attorney General Garland said:

"While it is very plain from the language of the grant that Congress intended to donate the land for the specific purpose designated therein, namely, to be used 'as a site for the public building of said county,' yet, whether this annexes a *condition* to the grant, or creates a mere *trust,* is not so clear. If a condition upon breach thereof the grant would be liable to forfeiture; if a trust, the same result would not follow upon a breach, but the aid of a court of equity might be invoked by proper parties to effectuate the trust. * * * *In the former case I submit that, in the absence of any law of Congress declaring the forfeiture or directing the institution of proceedings to that end, no authority exists to bring a suit in behalf of the United States to recover the land on the ground of failure to perform the condition.*" 18 Opinions of Attorneys General, p. 264.

A similar opinion was later given by Attorney General Miller in reference to the same matter. 20 Opinions of Attorneys General, p. 37.

In a report to the President concerning the duties of his office Attorney General Cushing said:

"Accordingly, the opinions of successive Attorneys General possessed of a greater or less amount of legal acumen, acquirement, and experience have

come to constitute a body of legal precedents and exposition, having authority the same in kind, if not the same in degree, with decisions of the courts of justice. It frequently happens that questions of great importance submitted to him for determination are elaborately argued by counsel; and whether it be so or not he feels, in the performance of this part of his duty, that he is not a counsel giving advice to the government as his client, but a public officer, acting judicially, under all the solemn responsibilities of conscience and of legal obligation. * * * Although the act requiring this duty of the Attorney General does not expressly declare what effect should be given to his opinion, yet the general practice of the government has been to follow it—partly for the reason already suggested, that an officer going against it would be subject to the imputation of disregarding the law as officially pronounced, and partly from the great advantage, and almost necessity, of acting according to uniform rules of law in the management of the public business, a result only attainable under the guidance of a single department of assumed special qualifications and official authority." 6 Opinions of Attorneys General, p. 326.

While the Supreme Court of the United States has not passed upon this question as explicitly as we might wish, yet the language of the court in many decided cases is in entire harmony with the views of the department of justice. Thus in United States v. Repentigny, 5 Wall. 211, 268, 18 L. Ed. 627, the court said:

"The mode of asserting or of assuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly, under the authority of the government, without these preliminary proceedings."

This language is repeated and approved in Schulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551, Farnsworth et al. v. Minn., etc., & Pac. R. R. Co., 92 U. S. 49, 67, 43 L. Ed. 530, and McMicken v. United States, 97 U. S. 204, 218, 24 L. Ed. 947.

In Schulenberg v. Harriman, supra, the court said:

"And it is settled law that no one can take advantage of the nonperformance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs or the successors of the grantor if the grant proceed from an artificial person; and, if they do not see fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. The authorities on this point, with hardly an exception, are all one way from the Year Books down. And the same doctrine obtains where the grant upon condition proceeds from the government. No individual can assail the title it has conveyed on the ground that the grantee has failed to perform the conditions annexed. * * * In what manner the reserve right of the grantor for breach of the condition must be asserted so as to restore the estate depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of the condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement."

In St. Louis, etc., Ry. Co. v. McGee, 115 U. S. 469, 6 Sup. Ct. 123, 29 L. Ed. 446, the court said:

"It has often been decided that lands granted by Congress to aid in the construction of railroads do not revert after condition broken until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose, or through some leg-

islative action legally equivalent to a judgment of office found at common law. * * * Legislation to be sufficient must manifest an intention by Congress to reassert title and to resume possession."

United States v. Repentigny, Schulenberg v. Harriman, and St. Louis, etc., Ry. Co. v. McGee were cited with approval by the court in Spokane, etc., & B. C. R. Co. v. Washington, etc., Great Northern R. Co., 219 U. S. 166, 31 Sup. Ct. 182, 55 L. Ed. 159 (Feb. 1, 1911), in speaking of this identical grant, and the court again affirmed the rule that in case of a public grant "the right to forfeiture must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, or there must be some legislative assertion of ownership for breach of the condition." In the case of United States v. Northern Pac. Ry. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836, the Attorney General had filed a bill of complaint in the Circuit Court of the United States for the District of Minnesota against the Northern Pacific Railroad Company and others to cancel and annul a patent for a tract of land lying more than ten miles east of Duluth, in the state of Minnesota, which patent was alleged by the bill to have been inadvertently and mistakenly issued. In stating the position of the government the court said:

"In other words, if we understand the position, it is claimed that under section 8 of the act of July 2, 1864 [c. 217 (13 Stat. 370)], noncompletion of the railroad within the time limited of itself operates as a forfeiture, the grant immediately reverts to the government, and courts must so hold on the simple statement of the fact of noncompliance within the limit."

But in answer to this contention the court said: "We do not understand this to be a correct statement of the law." The court then quoted with approval from the opinion of Mr. Justice Nelson in United States v. Repentigny, from the opinion of Mr. Justice Field in Schulenberg v. Harriman, and from the opinion of Chief Justice Waite in St. Louis, etc., Rd. Co. v. McGee, 115 U. S. 473, 6 Sup. Ct. 123, 29 L. Ed. 446, and continued as follows:

"As the bill in this case does not allege that it is brought under authority of Congress for the purpose of enforcing a forfeiture, and does not allege any other legislative act whatever looking to such an intention, it is plain, under the authorities cited, that this suit must be regarded as only intended to have the point of the eastern terminus judicially ascertained. This being so, and that terminus having been found to be at Ashland, it follows that the courts below committed no error in dismissing the bill of complaint."

In United States v. Tennessee & C. R. Co. (C. C.) 71 Fed. 71, the court said:

"If the government of the United States, through its legislative body, takes no action to enforce the condition in the granting act to these lands, then by what right or authority can this suit be maintained? If it be correct that the lands in question are not within the terms of the forefeiture act, then how is it shown that it ever was the purpose of Congress to insist on any forfeiture contained in any provision of the act? On the contrary, does it not show that no such purpose was ever entertained, because never put into execution by any legislative act? It may be, and indeed the language used in the forfeiture act cited, supra, indicates, that the land in question may have been purposely excluded from the terms of that act, and who shall say that the Congress did not find ample reason why the construction of the railroad had been so long delayed, and why the forfeiture shall not apply to it? Con-

gress may have been influenced by the condition of the country for a portion of the time between the passage of the granting act and the final completion of the road. The intervention of the recent war may have had an influence upon this legislation; but, whatever it may have been—and the motive which influenced Congress is not open to question here—it is sufficient to say that, in the absence of congressional action as to the grant of these lands, there are no proper grounds upon which this bill can be maintained. It is clear implication from the action of Congress in the forfeiture act, September 29, 1890. that the Congress did not intend to insist on any condition subsequent which existed in the granting act."

The judgment in this case was affirmed by the Circuit Court of Appeals for the Fifth Circuit in United States v. Tennessee & C. R. Co. et al., 81 Fed. 544, 26 C. C. A. 499. The judgments of the lower courts were reversed by the Supreme Court, however, in United States v. Tennessee & Coosard Rd., 176 U. S. 242, 20 Sup. Ct. 370, 44 L. Ed. 452, but on other grounds.

The legislation of Congress leads me to the same conclusion. That body has at all times acted in conformity with the opinions of the different Attorneys General, and has assumed that land grants can only be forfeited for breach of conditions subsequent by direct legislative act or by judicial proceedings expressly authorized by law. Thus by Act Jan. 31, 1885, c. 46, 23 Stat. 296, there was forfeited to the United States so much of the land granted in aid of the construction of a railroad and telegraph line from Portland to Astoria and McMinnville, in the state of Oregon, as was adjacent to and coterminus with the uncompleted portions of the road. By Act July 6, 1886, c. 637, 24 Stat. 123, there was forfeited to the United States the lands granted to the Atlantic & Pacific Railroad Company, with certain reservations and exceptions not material here. By Act Sept. 29, 1890, c. 1040, 26 Stat. 496 (U. S. Comp. St. 1901, p. 1598), there was forfeited to the United States all lands granted to any state or corporation adjacent to and coterminus with the uncompleted portions of the several roads in aid of which the grants were made. By Act June 26, 1906, c. 3550, 34 Stat. 482 (U. S. Comp. St. Supp. 1909, p. 640), there was forfeited to the United States all rights of way over public lands granted by Act March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), where the road had not been completed, or was not under construction at the time of the passage of the forfeiture act. By Act March 2, 1889, c. 377, 25 Stat. 850, the Attorney General was authorized and directed to bring suit for the forfeiture of certain lands granted to the state of Oregon. By joint resolution approved April 30, 1908 (35 Stat. 571), the Attorney General was authorized and directed to bring suit to enforce all rights and remedies of the United States growing out of or appertaining to certain land grants therein mentioned.

It is a significant fact that a court of equity could not decree a forfeiture, such as was declared by Congress in any of the instances cited, without express legislative authority therefor. That court has no legislative or dispensing power. It must administer justice according to fixed rules. It can only determine whether there has been a substantial breach of the conditions, and, if that f ͏t is established, it must forfeit the grant in its entirety, unless Congress has ordained

otherwise. In fact, it has been said by the highest authority that a court of equity will never lend, its aid to enforce a forfeiture for breach of a condition subsequent. "It is a universal rule in equity never to enforce either a penalty or forfeiture. Therefore courts of equity will never aid in the devesting of an estate for a breach of a covenant or a condition subsequent, although they will often interfere to prevent the devesting of an estate for a breach of a covenant or condition." Story's Eq. Jur. (13th Ed.) § 1319. "It is a well-settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture." Pomeroy's Eq. Jur. (3d Ed.) § 459. "Equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty, or anything in the nature of either." Marshall v. Vicksburg, 15 Wall. 146, 149, 21 L. Ed. 121. "Equity abhors forfeitures, and will not lend its aid to enforce them." Jones v. Guaranty & Indemnity Co., 101 U. S. 622, 628, 25 L. Ed. 1030. "Nor will the court be induced to depart from its uniform course, and take cognizance of that question because the jurisdiction is sought on the ground of removal of clouds from the title; for the right of the complainants to a dispersion of the cloud is dependent upon a favorable adjudication of the first proposition, viz., that they are owners of the estate, by reason of a breach of the condition." M. & C. R. R. Co. v. Neighbors, 51 Miss. 412. Whether the rule is stated too broadly by these authorities we need not inquire, for I am convinced that a court of equity will not lend its aid to enforce a forfeiture in a case such as this, in the absence of legislative authority defining its powers and prescribing the mode of their exercise.

The only case called to my attention in which the government has asserted and maintained the right to enforce a forfeiture in equity for breach of a condition subsequent, without express legislative authority therefor is United States v. Whitney (C. C.) 176 Fed. 593. It was there held that the government may maintain a suit in equity to forfeit and annul a grant of a right of way for canals, ditches, and reservoirs, under Act March 3, 1891, c. 561, 26 Stat. 1095 (U. S. Comp. St. 1901, p. 1535), in the absence of a legislative declaration of forfeiture, and without express authority of law therefor. The court there cited many of the cases to which I have referred, and concluded that the question now under consideration was not involved. I have already said that the Supreme Court has not decided the question as explicitly as we might wish, but nevertheless, if the law is not as I have declared it, it must be conceded that many eminent judges have been guilty of gross inaccuracy of speech in many important cases. In speaking of the decision in United States v. N. P. R. R. Co., supra, in the Whitney Case, the court said:

"Certain expressions in United States v. N. P. R. R. Co., 177 U. S. 435 [20 Sup. Ct. 706, 44 L. Ed. 836], appear to be more pointedly favorable to the defendant's contention. The particular sentence relied upon is as follows: 'As the bill in this case does not allege that it is brought under authority of Congress for the purpose of enforcing a forfeiture, and does not allege any other legislative act whatever looking to such an intention, it is plain, under the authorities cited, that this suit must be regarded as only intended to have

the point of the eastern terminus judicially ascertained.' It must be borne in mind, however, that this language was used in stating the conclusion of the court upon the question whether or not the position assumed by the government at the argument was within the pleadings."

This in my opinion is not a correct statement of the position of the Supreme Court. The conclusion of the court was based on the authorities cited, and not a single one of those authorities related even remotely to a question of pleading. They considered only the mode by which a public grant may be forfeited for breach of a condition subsequent.

In the Whitney Case the court found further warrant for its action in the constitutional provision that the President "shall take care that the laws be faithfully executed." Article 2, § 3. Conceding to the President and to the department of justice the full measure of their constitutional authority, if I am correct in the conclusion that "the mode of asserting or of assuming the forfeited grant is subject to the legislative authority of the government" (United States v. Repentigny, supra), that the forfeiture of a public grant must be asserted by legislative act, or "by judicial proceedings authorized by law" (Schulenberg v. Harriman, supra), or "through judicial proceedings instituted under authority of law for that purpose" (St. Louis, etc., Ry. Co. v. McGee, supra), and that a bill which does not allege "that it is brought under authority of Congress for the purpose of enforcing a forfeiture, and does not allege any other legislative act whatever looking to such intention," fails to state a cause of action (United States v. N. P. R. R. Co., supra), it must follow that until Congress acts there is no law for the President to execute or for the courts to administer. I think the case is rather controlled by the provision of the Constitution which declares that Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States (article 4, § 3). It is universally conceded that only the grantor or successors can take advantage of the breach of a condition subsequent, and, while in this case the government is nominally the grantor, the actual grantor is the Congress of the United States. And in my opinion a grant made by that body must remain of full force and effect until Congress ordains otherwise.

If I am correct in these conclusions, the bill of complaint states no cause of action in favor of the government, and the demurrer must be sustained. Let an order be entered accordingly.