THE FAJARDO DEVELOPMENT COMPANY, DEMANDANTE Y APELADA, *v.* ZALDUONDO, DEMANDANDO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en un caso sobre expropiación forzosa.

No. 970.—Resuelto en abril 8, 1914.

ALEGATO DEL APELANTE—RELACIÓN CONCISA DEL CASO.—El apelante en su alegato de acuerdo con el artículo 42 del reglamento de este tribunal debe hacer una relación concisa del caso sin relatar las alegaciones ni la prueba documental y testifical presentada por las partes.

EXPROPIACIÓN FORZOSA—FERROCARRILES—VARIACIÓN DEL TRAZADO DE LA LÍNEA—COMISIONADO DEL INTERIOR.—De acuerdo con la franquicia concedida a la corporación demandante para la construcción de un ferrocarril el Comisionado del Interior y el Consejo Ejecutivo tienen facultades para aprobar los planos del trazado original de la línea y de cualquier variación en la misma y la prueba presentada en este caso tiende a demostrar la necesidad de la alteración discutida en este pleito.

ID.—PRÓRROGA PARA LA TERMINACIÓN DE UN FERROCARRIL—INTERRUPCIÓN DEL TÉRMINO—CADUCIDAD DE LA FRANQUICIA.—De acuerdo con los términos de la prórroga concedida por el Consejo Ejecutivo a la corporación demandante para la terminación del ferrocarril es indudable que dicho término ha quedado interrumpido por este caso de expropiación forzosa, pero aun en el supuesto de que no se dedujera así de los términos de dicha prórroga, un procedimiento de expropiación forzosa interrumpe el término para la terminación de la construcción de un ferrocarril y no puede por tanto declararse caducada la franquicia por no haber sido terminada la obra dentro del término fijado.

FRANQUICIA PARA CONSTRUIR UN FERROCARRIL—QUIEN PUEDE PEDIR SU CADUCIDAD—TERMINACIÓN DE LA OBRA FUERA DE TIEMPO.—La caducidad de una franquicia para construir un ferrocarril por no haber sido terminada la obra dentro del término fijado, sólo puede ser declarada en virtud de un procedimiento judicial iniciado por el Estado contra la compañía y no en un procedimiento de expropiación forzosa contra el dueño de una finca y en virtud de alegación hecha por éste.

EXPROPIACIÓN FORZOSA—OFRECIMIENTO AL DEMANDADO DE LA INDEMNIZACIÓN—ALEGACIÓN DE LA OFERTA EN LA DEMANDA.—De acuerdo con la Ley de marzo

12, 1908, sobre expropiación forzosa la parte que trata de expropiar una finca debe ofrecer a su dueño la cantidad que está dispuesto a pagar por la finca y por los perjuicios que se ocasionen y esta oferta debe ser hecha después de la declaración de utilidad pública y alegada en la demanda como un hecho esencial de la misma. Atendidas las circunstancias especiales de este caso se resolvió que el demandado estaba impedido de alegar la falta de consentimiento para la expropiación de la finca y la falta de ofrecimiento de ser indemnizado por la compañía.

FRANQUICIAS—AUDIENCIA DE LOS INTERESADOS POR EL COMITÉ DE FRANQUICIAS— DECLARACIÓN DE UTILIDAD PÚBLICA.—Una declaración de utilidad pública no es nula por el hecho de que el dueño de la finca fuera oído únicamente por el Comité de Franquicias del Consejo Ejecutivo y nó por éste en pleno, ni el que el informe estuviera firmado únicamente por el Comité de Franquicias y nó por una mayoría de la totalidad del Consejo Ejecutivo.

Los hechos están expresados en la opinión.

Abogados de la apelada: *Sres. Armstrong & Keith* y *Luis Muñoz Morales.*

Abogados del apelante: *Sres. Aponte & Aponte.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La regla 42 de este tribunal prescribe que el alegato del apelante contendrá una relación fiel y concisa de la causa tal como conste en los autos. Esto no quiere decir, como a menudo sucede, que el apelante deba repetir las alegaciones formuladas en los alegatos y hacer una exposición de la prueba documental y testifical introducida por las partes. Esta relación fiel y concisa pondrá a la corte en condiciones de conocer los determinados errores que se aleguen y no todas aquellas cuestiones sobre las cuales hayan ofrecido prueba las partes y de cuya veracidad no existe discusión alguna. En este caso ninguno de los abogados de las partes ha hecho un resumen de los hechos, habiéndose limitado solamente a relacionar las alegaciones y la prueba. Trataremos de hacer lo que no han hecho los abogados.

La demandante es una corporación organizada de acuerdo con las leyes de Connecticut. En 1º. de noviembre de 1905, el Gobernador de Puerto Rico aprobó una franquicia concedida a dicha compañía por el Consejo Ejecutivo que también fué aprobada por el Presidente de los Estados Unidos en 11 de diciembre de 1905, de conformidad con las disposi-

ciones de la Ley Orgánica. La expresada franquicia auto-
rizaba a la compañía para construir una línea de ferrocarril
desde Mameyes a Naguabo con un ramal especial hasta la
playa de Fajardo. En el párrafo segundo de la mencionada
franquicia se dispuso que la compañía estaría obligada a pre-
sentar al Comisionado del Interior para la aprobación del
Consejo Ejecutivo, un trazado correcto de la línea de dicho
ferrocarril. Las verdaderas palabras de la franquicia tra-
ducida del inglés, son las siguientes:

"La concesionaria *presentará* al Comisionado del Interior para la
aprobación del Consejo Ejecutivo, un trazado correcto de la ruta del
predicho ferrocarril, dentro de un tiempo razonable desde la fecha
de la aceptación de esta ordenanza por la concesionaria, según lo que
más adelante se dispone en la presente; y todos los planos de super-
construcción, vías, desvíos, alcantarillas, puentes y terraplenes, se
presentarán al Comisionado del Interior por quien deberán ser apro-
bados antes de proceder a la obra de construcción. Las obras que
ya estén terminadas por la concesionaria en terrenos adquiridos por
ella, o para su beneficio, con anterioridad a la aceptación de esta orde-
nanza, podrán ser aceptadas y aprobadas por el Comisionado del Inte-
rior."

También se disponía en la franquicia que la corporación
quedaría obligada a concluir toda la construcción de la vía
dentro de los tres años después de haber sido aceptada la
franquicia por la compañía, aceptación que tuvo lugar el día
12 de diciembre de 1905. En 1909 se concedió una prórroga
del término especificado en la franquicia, y luego otra en
1910, habiendo sido aprobadas las dos por el Gobernador tal
como fueron presentadas. Según los términos de la última
prórroga la línea debía quedar concluída el día 9 de septiem-
bre de 1910. Sin embargo, en la prórroga concedida en 1909
existía una cláusula en la que se disponía que el Consejo
Ejecutivo podría conceder otra prórroga razonable con el
fin de que la compañía pudiera dejar ultimados los procedi-
mientos de expropiación forzosa. Pasó el día 9 de septiem-
bre de 1910, sin estar terminada la línea completamente pero

el Comité de Franquicias del Consejo Ejecutivo informó al Consejo que de acuerdo con los términos en que aparecía redactada la prórroga de 1909, eran éstos bastante amplios y podía el Consejo de conformidad con ellos dar más tiempo a la compañía para terminar los procedimientos de expropiación forzosa. La franquicia de 1910 no contenía disposición alguna que privara al Consejo Ejecutivo de la facultad de prorrogar el término para los fines de la expropiación forzosa como lo disponía la prórroga de 1909, habiendo concedido en su consecuencia el Consejo Ejecutivo más tiempo a la compañía.

Procediendo de acuerdo con la primera franquicia presentó la compañía su plano de la línea al Comisionado del Interior que fué aprobado por éste en 27 de noviembre de 1905. Al tratar la compañía de construir su línea creyó necesario debido a las curvas y declives, y procediendo de conformidad con los informes de sus peritos, cambiar una parte de su ruta que estaba comprendida entre Ceiba y Naguabo, sometiendo al efecto un plano al Comisionado del Interior.

No aparece en los autos el mismo plano o diseño según quedó modificado, no obstante haber sido presentado como prueba y certificado por el Comisionado del Interior. Aparece una certificación de una memoria que sometió la compañía al Comisionado en la que se describía el cambio hecho, la cual fué admitida como prueba. De la prueba resultó que el cambio de plano fué aprobado por el Comité de Franquicias del Consejo Ejecutivo el día 4 de agosto de 1910, de cuyo Comité era Presidente el Comisionado, habiendo sido aprobado también por el Consejo Ejecutivo.

La parcela de terreno de Miguel Zalduondo Veve, o sea el apelante, era una de las porciones por las que ha de pasar el referido ferrocarril, como se indica en su plano enmendado, si bien dicho terreno no aparecía en el plano original que fué aprobado por el Comisionado del Interior en 1905. Después que había resuelto la compañía que era necesario el cambio de plano y fijado su ruta, pero antes de haber sido

aprobado el referido plano por las autoridades, dicha comñía se dirigió a todos los propietarios por cuyas fincas se proponía pasar, explicándoles por donde intentaba atravesar su línea a lo que no se opusieron dichos propietarios. Entre los referidos propietarios se encontraba el causante del demandado de apellido Vaamonde. El expresado Vaamonde tampoco se opuso a que la compañía pasara la línea por su finca. Dicha propiedad fué vendida a Zalduondo Veve en 28 de septiembre de 1909. La memoria acerca de dicho cambio de plano del ramal ferroviario lleva fecha de mayo 12, 1910.

En 7 de mayo de 1910, y por consiguiente con anterioridad a la aprobación del cambio de ruta por las autoridades, la compañía apelada dirigió una carta al Sr. Zalduondo ofreciéndole comprar a razón de $100 por cada cuerda por su 23/100 de cuerda de terreno y también a razón de $100 por cuerda por daños y perjuicios. En contestación a esta proposición, escribió Zalduondo la siguiente carta a la compañía:

"Fajardo, mayo 10 de 1910. A la Fajardo Development Co., Fajardo. Señores: Según carta de 7 de este mes que recibí ayer, suscrita por sus abogados Garvan & Armstrong, se me notifica que procediendo de acuerdo con instrucciones de Vds., si dentro de diez días yo no he aceptado sus proposiciones por una parcela de tierra de mi finca de Ceiba, ellos pondrán en práctica contra mí procedimientos de expropiación forzosa.

"Tal carta me ha extrañado sobremanera porque Vds. tienen motivos sobrados para conocerme y saber que el que suscribe no es hombre de hablar dos cosas distintas por un mismo negocio. Mi última palabra sobre este asunto fué pronunciada a su *manager*, el Señor Alvarez Torres y a su abogado Don Luis Muñoz Morales desde hace tiempo.

"Además, esta compañía sabe muy bien que yo no soy hombre que cedo a la presión de ninguna amenaza sino que muy al contrario acostumbro rechazarlas de plano vengan de donde vinieren, preparándome para contestar a ellas en la forma que proceda.

"El objeto esencial de mi carta es evitarles la pérdida de tiempo que representaría para Vds. esos diez días del plazo que me dan para consumar la amenaza y decirles al mismo tiempo que están Vds. en un error al creer que pueden expropiarme, pues sólo procede la expro-

piación cuando la *necesidad* de pasar por la tierra puede justificarse, y yo probaré hasta la evidencia que Vds. no *tienen necesidad* de pasar por mi finca en cuestión sino una intención marcada de perjudicarme en mi intereses creyendo que una franquicia es bastante bandera para cobijar tamaña pretensión.

"La ley está por encima de todo, y como siempre, yo estoy resuelto a hacer que Vds. y todos los que contraten o tengan negocios conmigo sean compelidos a su cumplimiento.

"A la expropiación, pues, sin pérdida de tiempo, y que resulte lo que al derecho de cada cual corresponda."

Durante el juicio el demandado se opuso a la admisión de esta correspondencia por el fundamento de que en la fecha en que se escribieron las referidas cartas no se había hecho declaración alguna de utilidad pública.

La compañía apelada acudió al Consejo Ejecutivo para instar los procedimientos de expropiación contra la propiedad del Sr. Zalduondo Veve. Se notificó a éste último que compareciera ante el Consejo Ejecutivo, donde se le dirigió al Comité de Franquicias que oyó sus objeciones. En 25 de agosto de 1910, el Consejo Ejecutivo declaró de utilidad pública el terreno del Sr. Zalduondo Veve. En 1º. de octubre de 1910, se inició esta acción de expropiación forzosa de dicho terreno. Después de los procedimientos preliminares quedó trabada la controversia entre las partes y celebrado el juicio dictó la corte sentencia a favor de la compañía demandante, contra cuya sentencia interpuso apelación el demandado, alegando al efecto cuatro fundamentos de error:

(*a*) El primer señalamiento de error alegado es que la corte cometió error al no desestimar la demanda habiéndose probado que la finca que trataba de expropiarse no había sido comprendida en el plano original. Conviene tener presente en cuanto a este particular, el hecho de no constar en los autos la copia del plano original ni la del enmendado. La memoria de la compañía demandante en lo que hace referencia a los cambios está incluída en la exposición, pero el apelante nada ha dicho sobre el alcance de dicho cambio, no pudiendo tampoco este tribunal determinar sin la ayuda de

peritos o por alguna otra prueba a qué se refieren las cifras y palabras contenidas en la memoria. Tendremos que suponer que dicha memoria fué debidamente aprobada por el Comisionado del Interior como también que los cambios fueron en la línea general del trazado como lo indica la misma memoria. La prueba tiende a establecer que dichos cambios eran necesarios. En la franquicia original se disponía que el plano se sometería al Comisionado del Interior para la aprobación del Consejo Ejecutivo y que "todos los planos de superconstrucción, Vías, desvíos   *   *   *   puentes y terraplenes para la construcción general del ferrocarril se presentarán al Comisionado del Interior, por quien podrán ser aprobados antes de proceder a la obra de construcción." Aun cuando fuera esencial el cambio de plano, el apelante no ha sometido a la consideración de esta corte nada de donde resulte que las mismas autoridades que aprobaron el plano de conformidad con la franquicia no podían prestar su consentimiento y dar validez al cambio de referencia. Según la franquicia las personas que habían de determinar la ruta no eran el Gobernador ni el Presidente, sino el Comisionado y el Consejo Ejecutivo. Estos últimos eran necesariamente las partes contratantes de un lado y la compañía del otro. Los términos del contrato pueden ser modificados por el consentimiento mutuo de dichas partes. El consentimiento del Comisionado se presume necesariamente de la omisión de incluir el mapa en el cuàl se vería dicha aprobación y de la admisión hecha al parecer por el apelante de este hecho al no oponerse al mismo y no hacer ninguna alegación acerca de él ante este tribunal.

Las palabras de la franquicia arriba citadas parecen dar además al Comisionado una facultad algo amplia. No se ha probado que se haya causado perjuicio alguno al público porque el plano hubiera quedado ultimado finalmente en el año 1910 y no en 1905.

(*b*) El segundo error que ha sido alegado se funda en que la corte no resolvió que la franquicia había sido anulada,

y por tanto, que la compañía no tenía derecho a expropiar. La razón principal de esta alegación es que la compañía no terminó la obra para el día 9 de septiembre de 1910, como se disponía en la prórroga que se le concedió en dicho año. El Comité de Franquicias del Consejo Ejecutivo fué de parecer de que las palabras contenidas en la prórroga de 1909 dando facultades al Consejo Ejecutivo para conceder más tiempo a la compañía para los procedimientos de expropiación eran suficientemente amplias para dejar en suspenso la terminación de aquella parte de la obra en la que estaban comprendidos los procedimientos de expropiación. Somos de la misma opinión. Cualquier otra interpretación nos llevaría al absurdo de que un propietario que muestre oposición puede anular una franquicia por el hecho de negarse a entregar su terreno. Y creemos que a igual conclusión se llega aun cuando no se mencione de modo terminante la facultad de prorrogar el término contenida en la franquicia de 1909.

Convenimos además con el apelado en que por lo general la cuestión referente a si la corporación ha perdido su derecho a determinada franquicia solamente podrá ser considerada por el Estado mediante un procedimiento adecuado iniciado con tal fin, y cita la obra de Joyce sobre Franquicias, páginas 869 y 875, y varios casos de California. La regla es que únicamente el cedente o sus causahabientes podrán aprovecharse del incumplimiento de una condición subsiguiente en lo que respecta a un derecho o privilegio que haya sido concedido. *Schulenberg* v. *Harriman,* 21 Wall., 44; *United States* v. *Northern Pacific Ry. Co.,* 177 U. S.; 440; *Van Wyck* v. *Knevals,* 106 U. S., 369; *Atlantic and Pacific R. R. Co.* v. *Mingus,* 165 U. S., 433; *Kerfoot* v. *Farmers' and Merchants' Bank,* 218 U. S., 287. Y que la anulación deberá ser declarada judicialmente lo mismo en el caso de una compañía de ferrocarril que no termina la obra a su debido tiempo, como aparece además expresado en el caso de *Utah N. and C. R. Co.* v. *Utah and C. Ry. Co.,* 110 Fed.,

889; *In the matter of New York Elevated R. R. Co.,* 17 N. Y., 337, 338; *Toledo and Ann Arbor R. R. Co.* v. *Johnson,* 49 Mich., 148, 151.   La franquicia constituye un contrato entre las partes cuya validez deberá resolverse en una acción entre el Estado y las partes a no ser que se disponga otra cosa en dicha franquicia.   *Thompson sobre Corporaciones,* párrafo 5337; *Riggs* v. *Cape Cod Ship Canal Co.,* 137 Mass., 71. Iguales razonamientos pueden verse en el caso de *Compañía Azucarera* v. *El Registrador,* 19 D. P. R., 156, y casos citados en el mismo.   La misma regla se observa cuando la franquicia se concede en el Estado del domicilio o en otra jurisdicción.   *Bank of Augusta* v. *Earle,* 13 Pet., 599; *Spring Valley Water Works* v. *Schottler,* 62 Cal., 69, en cuyo caso se ve también la naturaleza de una franquicia.

(*c*)   También se alega como error que la compañía no hizo ofrecimiento de pago al demandado y apelante después de la declaración de utilidad pública, en la forma en que lo exige el estatuto.   Leyes de 1908, página 98.   En contestación a esta alegación el apelado en primer lugar sostiene que esta cuestión no fué promovida ante la corte inferior.   Se alega en la demanda que el demandante estaba dispuesto a pagar y ofreció pagar al demandado la debida compensación por el terreno incluyendo su valor y los daños y perjuicios que pudiera sufrir el demandado con motivo de la expropiación, y que dicho demandado se negó a aceptar la proposición. Debemos interpretar estas palabras como que con ellas se trató de cumplir con el estatuto, pues de no ser así la demanda no determinaría una causa de acción.   En los casos de expropiación forzosa en que es requisito indispensable que se haga el ofrecimiento de pago al propietario del terreno para que la acción prospere, deberá alegarse en la demanda la oferta.   15 Cyc., 635.   El párrafo de la demanda en que se hacía referencia a dicha oferta fué negado de modo específico en la contestación y como hemos visto que el demandado se opuso a la admisión de la correspondencia donde constaba la oferta, debemos declarar que la cuestión fué

planteada debidamente en la corte inferior. El apelado.alega además que no existe nada absolutamente en el estatuto que determine la fecha en que debe hacerse el ofrecimiento. Las palabras del estatuto son como siguen:

"Sección 4.—Hecha la declaración de utilidad pública de una obra, si los dueños de la propiedad que haya de ser expropiada no se aviniesen por cualquier motivo a consentir la expropiación o expropiaciones, que aquélla requiera, determinará ello una causa de acción en favor del que haya de realizar dicha obra, y podrá ejercitarla contra los mencionados propietarios    *    *    *."

Entendemos que la verdadera intención del estatuto arriba citado es que la oferta de pago.debe hacerse y que el momento de hacerla es después de la declaración de utilidad pública, disponiéndose en el mismo párrafo que se inserte en la demanda una copia de la declaración de utilidad pública.

Alega además la apelada que la declaración de utilidad pública se hizo en la primitiva franquicia y por tanto no era necesario hacer otra declaración antes de que se hiciera la oferta que exige el estatuto. La franquicia es en efecto una declaración de utilidad pública pero si en ella se prescinde de la necesidad de hacer otra declaración de utilidad pública específica para determinada propiedad, no tenemos que resolver sobre esto debido a la naturaleza especial de los hechos que consideramos. La apelada hizo su oferta a Zalduondo en 7 de mayo de 1910. Es cierto que en esa fecha solamente se había presentado al Comisionado el plano original de la línea, o sea el que fué aprobado en noviembre de 1905. El cambio de plano en el cual se comprendía el terreno del demandado fué sometido en mayo 12, 1910, o sea pocos días después. Sin embargo, dado el hecho de la falta de oposición del causante del demandado; considerada la actitud resuelta y hostil de dicho demandado creemos que éste está impedido de promover la cuestión de falta de consentimiento entre él y la compañía. Gran parte del contenido de

su carta podría quizás considerarse como una mera afirmación hecha por él de que no existe necesidad de atravesar su finca.   Pero sus últimas palabras son de distinta naturaleza y pudieron fácilmente haber inducido a la compañía a creer que el demandado se opondría de cualquier modo a la expropiación.   La carta revela que el demandado y la compañía por lo menos habían celebrado otra entrevista en la que se había mantenido igual actitud.   Debemos también insistir en el hecho de la anterior notificación a Vaamonde sin haber mostrado oposición.

(*d*) El cuarto señalamiento de error alegado por el apelante es que la declaración de utilidad pública era nula.   Sostiene que no se le oyó debidamente en el Consejo Ejecutivo. Se le notificó que compareciera ante el Consejo Ejecutivo donde se le dirigió al Comité de Franquicias que le oyó debidamente las razones que expuso.   No existe nada que sepamos que se oponga a esta práctica legislativa y la única cuestión que consideramos es si tuvo o nó el demandado la debida oportunidad de ser oído, la que creemos que se le dió.   No tiene ninguna importancia el argumento de que el informe no fuera firmado por un *quorum* del Consejo Ejecutivo y sí solamente por cinco miembros.   Estos cinco miembros formaban todo el Comité de Franquicias y estamos seguros que informaron al Consejo Ejecutivo, de donde procedía la declaración de utilidad pública, y era válido.

Debe confirmarse la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.