ANGEL BRACERO, demandante y apelado, *v.* S. RAMÍREZ & CO., INC., demandada y apelante.

No. 4453.—*Sometido:* Diciembre 13, 1929. *Resuelto:* Julio 24, 1930.

F. *Ramírez de Arellano* y L. *Tormes,* abogados de la apelante; R. V. *Pérez Marchand,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En una acción de daños y perjuicios provenientes de la caída repentina de sacos de arroz sobre el demandante en cierto establecimiento, la demandada alegó y trató de probar que no era dueña ni tenía el dominio del referido establecimiento, y, además, que el demandante era un obrero empleado por los dueños del establecimiento y, por consiguiente,

que estaba obligado a presentar su reclamación de acuerdo con la ley de Indemnizaciones a obreros.

La corte declaró que el demandante era un contratante independiente según toda la prueba tendía a demostrar, y no nos detendremos a estudiar la prueba en conjunto.

La prueba no fué tan fuerte con respecto a la pertenencia del establecimiento. Este estaba situado en Ponce. Las cláusulas de incorporación revelaban que la demandada estaba autorizada para tener una sucursal en Ponce; ella admitió que Cintrón era su agente vendedor en Ponce, y hubo prueba tendente a demostrar que a personas que tenían negocios con el establecimiento se les presentaban cuentas a nombre de la demandada. La evidencia directa y circunstancial es suficiente para justificar la conclusión de la corte inferior de que la demandada tenía una sucursal en Ponce. No damos mayor atención a los puntos arriba enunciados, porque la sentencia debe ser revocada por otro fundamento.

No estamos en absoluto satisfechos de los alegatos presentados por las partes. El alegato de la apelante no contiene una relación concisa del caso tal como lo exige la regla 42 y según lo hemos declarado enfáticamente en nuestra jurisprudencia. *Gandía* v. *Pizá Hermanos,* 17 D.P.R. 916; *Fajardo Development Co.* v. *Zalduondo,* 20 D.P.R. 253; *Díaz et al.* v. *Cividanes,* 29 D.P.R. 581; y *G. Ferrer e Hijo* v. *Am. R. R. Co.,* 39 D.P.R. 40. Al igual que en muchos otros casos, la apelante hace un resumen considerablemente extenso de las alegaciones y de las declaraciones de los testigos, y discute el efecto de la presentación de tal prueba, y es sólo en la página 41 de su alegato que hallamos el señalamiento de errores. Debe ser un caso muy raro aquél en que el señalamiento de errores se posponga para después de la tercera o la cuarta página del alegato; y los argumentos relativos a los efectos de la prueba deben siempre seguir más bien que preceder al señalamiento de errores. Por otra parte, la apelante insistió fuertemente en que no había prueba de negligencia.

■■ El apelado contestó a este señalamiento relativo a la falta de negligencia con argumentos sobre lo que este tribunal generalmente ha hecho en los casos de conflictos de prueba, y finalmente sostuvo que se trataba de un caso de *res ipsa loquitur*. La corte inferior no basó su fallo en la doctrina de *res ipsa loquitur*. Empero, el apelado no discute en absoluto tal doctrina como aplicable a los hechos del caso, ni trata de exponer la prueba tendente a demostrar la negligencia, según la declaró la corte en términos generales.

Este era un caso en que la prueba tendió a demostrar que Angel Bracero, un contratante independiente, fué alquilado por la demandada para que transportara unos sacos de arroz de cierto establecimiento de Ponce perteneciente a la demandada, y cuando él regresó al establecimiento por segunda vez para trasladar los sacos de arroz, mientras se hallaba de espaldas, unos treinta sacos de la estiba le cayeron encima, lesionándolo. La prueba no controvertida tendió a demostrar que no sólo hubo una segunda visita por parte de Bracero a la estiba, si que también otros trabajadores estaban removiendo sacos de la misma estiba.

Ahora bien, la doctrina de *res ipsa loquitur* presume que el accidente no hubiera ocurrido normalmente si la demandada hubiera ejercitado el debido cuidado. Coloca el peso de la prueba sobre los hombros de la parte demandada. Los tribunales se sienten renuentes a aplicar la doctrina cuando existe prueba directa de negligencia, aunque, desde luego, cuando se levanta la doctrina, ligera prueba de negligencia no excluiría su aplicación. Podría asimismo decirse que esa doctrina es aplicada por lo general únicamente cuando la cosa que produjo el accidente se halla bajo el dominio exclusivo de la parte demandada, o quizás que la situación es tal que el demandado está obligado a explicarla.

Si por invitación, una persona, sin más, hubiese entrado en el establecimiento de la demandada, y la estiba de sacos le hubiere caído encima, la doctrina de *res ipsa loquitur* sería aplicable. Se presenta una situación diferente cuando

personas distintas al demandado han intervenido, especialmente cuando, como en el presente caso, el demandante mismo ha intervenido. *Non constat* que el accidente no habría ocurrido si el demandante y los otros trabajadores no hubiesen extraído sacos de la estiba. El demandante estaba obligado a demostrar mediante una clara preponderancia de la prueba que, para la aplicación de la doctrina, la intervención extraña a la de la parte demandada era inofensiva. La demandada ofreció prueba tendente a demostrar que la estiba había sido cuidadosamente levantada, aunque no basamos nuestra decisión en esa evidencia.

Un testigo declaró que él había manifestado al agente de la demandada que la estiba había sido levantada defectuosamente. Eso sucedió por lo menos algún tiempo antes de ocurrir el accidente. Todavía estamos discutiendo la doctrina de *res ipsa loquitur*. Naturalmente, nada de lo que ese testigo dice revela el estado de las cosas en el momento del accidente. *Non constat* que el agente o la demandada, si actuó como un hombre prudente, cual es de presumirse, corrigió el defecto. La prueba tendió además a demostrar que el demandante era perito en la manipulación de estibas de sacos.

No vemos razón alguna para aplicar la doctrina de *res ipsa loquitur,* y dudamos que pueda ser invocada por primera vez en este tribunal. La corte inferior dijo:

"También se ha probado que la estiba de sacos que causó el accidente, fué levantada por empleados a las órdenes de la demandada y fué dicha estiba hecha de una manera defectuosa o mal preparada, y que no había señal aparente de peligro en la estiba, ni fué advertido el demandante en ningún momento, por los empleados de la demandada, de que la estiba estaba defectuosamente formada y que el accidente ocurrió mientras el demandante quedaba de espaldas a la referida estiba de sacos de arroz.

"Se ha probado además que el accidente ocurrió única y exclusivamente debido a la culpa, negligencia y falta de la demandada al formar defectuosas las estibas de sacos de arroz en su almacén, y no hacerle ninguna advertencia sobre ellas al demandante Bracero."

Es evidente que la corte no estaba aplicando la doctrina.

Convenimos con la apelante en que los autos no revelan que hubiera negligencia atribuible a la demandada al tiempo del accidente, y *debe revocarse la sentencia recurrida.*

OPINIÓN DISIDENTE DEL JUEZ· PRESIDENTE SR. DEL TORO

Al resolverse por esta Corte Suprema el recurso interpuesto en este caso revocando la sentencia que la Corte de Distrito de San Juan dictara a favor del demandante, disentí por estimar que la prueba obrante en autos sostenía el criterio del juez sentenciador. He vuelto a examinar el asunto y mi juicio es ahora aun más fuerte.

La corte sentenciadora declaró probados los siguientes hechos:

"Que el día 8 de julio de 1922, el demandante Bracero contrató con la sucursal de la demandada en la Playa de Ponce, Puerto Rico, una carga de sacos de arroz para trasportarlos desde dicha sucursal, a un establecimiento en la Ciudad de Ponce, y trasportó en su carro la primera partida de dicha carga, la que entregó al destinatario se-. gún instrucciones recibidas; que en la misma mañana volvió el demandante a la oficina de la demandada en la Playa de Ponce para recoger y trasportar órdenes del dependiente Eduardo Aneiro para trasportar otros 50 sacos de arroz, de a cien libras de peso cada uno.

"Que los sacos de arroz estaban colocados en una estiba a una altura de veinte sacos; que estando el demandante Bracero dentro del establecimiento de la demandada para cargar la segunda partida de sacos de su contrato, frente a la estiba antes mencionada y sin haber tocado ningún saco, se vino abajo la estiba y cogió debajo de ella al demandante Bracero cayéndole encima como 25 o 30 sacos de arroz; que lo sacaron de debajo de la estiba sin conocimiento, lo condujeron al Hospital Tricoche de Ponce, en donde estuvo asilado dos meses.

"Que a consecuencia del accidente Bracero sufrió una fractura del muslo derecho y de la cadera, habiéndole quedado una pierna más corta que otra y una diferencia en las caderas; habiendo perdido dicho demandante Bracero de un quince a veinte por ciento en el uso de la pierna lesionada, habiendo quedado parcialmente incapacitado para dedicarse a los trabajos a que antes se dedicaba, y ha-

biendo sufrido además, el demandante Bracero, dolores físicos y morales y no pudiendo hasta la fecha de la vista del caso, trabajar en ocupaciones en que tenga que hacer fuerzas.

"También se ha probado, que la estiba de sacos que causó el accidente, fué levantada por empleados a las órdenes de la demandada y fué dicha estiba hecha de una manera defectuosa o mal preparada, y que no había señal aparente de peligro en la estiba, ni fué advertido el demandante en ningún momento, por los empleados de la demandada, de que la estiba estaba defectuosamente formada y que el accidente ocurrió mientras el demandante quedaba de espaldas a la referida estiba de sacos de arroz.

"Se ha probado además, que el accidente ocurrió única y exclusivamente debido a la culpa, negligencia y falta de la demandada al formar defectuosas las estibas de sacos de arroz en su almacén, y no hacerle ninguna advertencia sobre ellas al demandante Bracero."

El testigo Miguel Mayol, de Ponce, comerciante en provisiones, socio de la casa "Hostos y Mayol," dueña del almacén en que estaba instalada la sucursal que la demandada tenía establecida en Ponce, en cuyo almacén estaba también instalada la oficina de "Hostos y Mayol," dijo:

"R. Pues recuerdo que ellos almacenaron una partida algo grande de arroz en el local que les teníamos alquilado, y se hizo la estiba bastante alta y a los pocos días o al día siguiente observé que la estiba se había inclinado hacia el frente y le llamé la atención a Luis Cintrón y a otro joven que estaba allí de apellido Aneiro, que la estiba estaba mal hecha y podía caerse, y me dijeron que no, que estaba bien, pero luego le hicieron otra estiba al frente, en sentido inverso aguantando la estiba que estaba inclinada hacia nuestra oficina. Salí de viaje y al regresar ví que unos carros fueron a coger esa mercancía en la oficina de S. Ramírez & Co.; era uno de esos días que había casi nada que hacer en nuestra oficina, y oí unos gritos, y corrí por la puerta de la oficina que comunicaba con la oficina de ellos y estaba otro joven que está aquí presente, que había sido cogido por unos sacos de arroz de la estiba que se cayó, pero inmediatamente me dijo otro de los que estaba allí trabajando, me dice. . .

"Ddo.: Señor Juez. . .

"Juez: No, no diga lo que le dijeron.

"R. Ayudamos a aquel joven e inmediatamente empezamos a sacar sacos del montón de la estiba que se había caído y sacamos de

debajo de los sacos, que estaba completamente cubierto por ellos al joven éste. el demandante.''

El demandante, declarando como su propio testigo, se expresó así:

''El sábado a las siete de la mañana salimos de nuestra casa para el trabajo y pasando por la calle del Comercio salía el señor Aneiro a la puerta llamando los carros para cargar y nos mandó a cargar arroz para el pueblo, no recuerdo qué cosa era; sé que cogí un viaje y lo llevé y cuando volví por el otro entré así a la oficina donde él estaba, me puse a hablar con él y ahí se cayó la estiba encima y ahí no supe nada más.''

Otro testigo, Francisco Torres, declaró:

''P. Sí, señor; estando yo frente a la casa del señor Ramírez el empleado llamó unos cuantos carreteros para cargar y yo me quedé para último y así que los demás carreteros habían cargado me arrimé a cargar también y entonces llegaba el señor Angel Bracero delante de mí a preguntar la cantidad que quedaba para cargar y el señor preguntándole y la estiba que viene para abajo y entonces llegó el señor Mayol y Francisco Mayoral y me sacaron y entonces al sacarme a mí se encontraron con el señor Bracero.''

De la declaración de Remigio Morales, testigo de la demandada, parece conveniente transcribir lo que sigue:

''P. ¿Quién dijo que la estiba estaba mal puesta?
''R. Los carreteros, los que cargaban el arroz.
''P. ¿Cómo fueron las palabras que Ud. escuchó?
''R. Se hablaba allí de eso, entonces un joven que estaba allí le dijo al principal. . . Yo entré a la oficina, pregunté por Luis Cintrón y me dijeron que no estaba, entonces yo traté de salir y cuando yo regresaba para salir, la oficina era chiquita, entonces oí que le decía el dependiente, o el encargado, 'tengan cuidado que la estiba se puede caer' y al momento se cayó la estiba.
''P. ¿Les advirtió que tuvieran cuidado en qué?
''R. En sacar los sacos.
''P. ¿Y se cayó esa estiba?
''R. Sí, señor.
''P. ¿Cuánto tiempo después?
''R. Al momento que yo oí eso.''

A nuestro juicio la prueba del demandante sostiene los hechos declarados probados por la corte. Sólo nos hemos referido en particular a aquella parte de la misma que concierne al extremo que sirvió de base para la revocación, pero deseamos consignar que a nuestro juicio es también amplia y robusta en todos los otros extremos fundamentales de la acción ejercitada y la sentencia pronunciada por la corte de distrito.

La sola declaración del testigo Mayol, que mereció entero crédito a la corte, y el hecho mismo de la caída de la estiba, hubieran sido suficientes.

La demandada fué advertida a tiempo del defecto. No quiso reconocerlo. Se limitó a hacer "otra estiba al frente, en sentido inverso aguantando la estiba que estaba inclinada." Esto demuestra no ya una negligencia corriente, sino crasa y persistente, porque lo natural era que la fuerza de gravedad siguiera actuando sobre los nuevos sacos hasta inclinarlos y derribarlos, o por lo menos que en cuanto los nuevos sacos se quitaran, como la prueba demuestra que se quitaron o comenzaron a quitarse, los antiguos inclinados terminaran por caer como cayeron produciendo al demandante el grave daño que sufriera.

Era el claro deber de la demandada al ser advertida del mal estado de la estiba, reformarla, no ocultar el defecto, haciéndolo aún más peligroso, que fué en verdad lo que hizo.

Conocemos la declaración del testigo de la demandada Morales. Por medio de otro testigo trató la demandada de demostrar que la primitiva estiba fué debidamente formada.

La teoría de la demandada parece ser que el derrumbe de la estiba se debió a la falta de cuidado de los mismos trabajadores que estaban cargando de los sacos en ella colocados. El propio demandante, declarando como testigo, expresó cómo tomaban los sacos. Se trataba de personas acostumbradas a ese trabajo y no parece lógico que fueran ellos mismos a ocasionarse el daño. Además, si se estima que la evidencia fué contradictoria, hay que reconocer que

el conflicto fué resuelto por la corte y que su resolución, de acuerdo con nuestra repetida jurisprudencia, no será alterada por nosotros a menos que se demuestre pasión, prejuicio, parcialidad o manifiesto error, y aquí si algo se ha demostrado de modo evidente es la crasa negligencia de la demandada, por el hecho mismo del derrumbe de la estiba y por la directa observación y clara advertencia a tiempo de Mayol.

A nuestro juicio procede la confirmación de la sentencia recurrida.

Estoy autorizado para decir que el Juez Asociado Sr. Hutchison está conforme con esta opinión.