[No. 6831.   Decided February 13, 1908.]

COLUMBIA VALLEY RAILROAD COMPANY, *Appellant*, v.
PORTLAND & SEATTLE RAILWAY COMPANY,
*Respondent*.[1]

PUBLIC LANDS—GRANTS IN AID OF RAILROADS. Act of Congress of June 26, 1906, declaring the forfeiture of all railroad rights of way theretofore granted under Act March 3, 1875, where the railroad has not been constructed and the period of five years has elapsed since its location, as provided for in the earlier act, is effective and complete as a forfeiture without any other or further proceedings on the part of the government; and the questions of fact may be inquired into by any judicial proceedings involving rights claimed under the original grant.

Appeal from a judgment of the superior court for Klickitat county, McCredie, J., entered December 31, 1906, upon

[1]Reported in 93 Pac. 1067.

findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to determine conflicting rights to a railroad right of way.   Affirmed.

*W. W. Cotton, Coovert & Stapleton,* and *Ralph E. Moody,* for appellant.

*James B. Kerr* and *George T. Reid,* for respondent.

Rudkin, J.—This was a controversy between two railway companies over a right of way through certain public lands of the United States, or, more properly speaking, through what were public lands of the United States at the time the rights of the plaintiff company attached.   The first and fourth sections of the act of Congress of March 3, 1875, are as follows:

"Sec. (1)   That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station-buildings, depots, machine shops, side-tracks, turn-outs, and water-stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

"Sec. (4)   That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such

lands over which such right of way shall pass shall be disposed of subject to such right of way: *Provided,* That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road." 18 U. S. Stat. at Large, Part 3, p. 482.

The plaintiff company complied with the requirements of these two sections during the year 1899, by filing with the secretary of the interior copies of its articles of incorporation, proofs of its due organization, and profiles of its road as located, but failed to complete the road or any section thereof within five years after location, as required by the proviso to § 4. On the 26th day of June, 1906, an act to declare and enforce the forfeiture provided by § 4 of the act of Congress of March 3, 1875, was approved by the President. 34 U. S. Stat. at Large, p. 482. This act provides as follows:

"That each and every grant of right of way and station grounds heretofore made to any railroad corporation under the Act of Congress approved March third, eighteen hundred and seventy-five, entitled 'An Act granting to railroads the right of way through the public lands of the United States,' where such railroad has not been constructed and the period of five years next following the location of said road, or any section thereof, has now expired, shall be, and hereby is, declared forfeited to the United States, to the extent of any portion of such located line now remaining unconstructed, and the United States hereby resumes the full title to the lands covered thereby freed and discharged from such easement, and the forfeiture hereby declared shall, without need of further assurance or conveyance, inure to the benefit of any owner or owners of land heretofore conveyed by the United States subject to any such grant of right of way or station grounds: *Provided,* That in any case under this act where construction of the railroad is progressing in good faith at the date of the approval of this act the forfeiture declared in this act shall not take effect as to such line of railroad."

The court below found that the plaintiff company had not constructed its road within the five years next following the

location thereof, and that the construction was not progress-
ing in good faith at the date of the approval of said last-
mentioned act, and concluded, as a matter of law, that all
rights acquired by the plaintiff company, under the act of
March, 1875, were forfeited by the act of June 26, 1906.
From a judgment entered in accordance with these findings
and conclusions, the present appeal is prosecuted.

The contention of the appellant is briefly this: (1) That
the grant made by the first section of the act of March 3,
1875, is a grant *in praesenti*. (2) That the title vested in
the appellant as soon as it filed proofs of its organization and
a profile of its road with the secretary of the interior. (3)
That the rights thus acquired could only be divested or for-
feited by act of Congress, or by some judicial proceeding
instituted by the United States in the nature of an inquest of
office at common law. (4) That the act of June 26, 1906, is
not sufficiently specific to work a forfeiture, because by its
terms it only extends to cases where the road has not been con-
structed within five years from date of location, or where con-
struction was not progressing in good faith at the date of the
approval of the act, and these questions of fact can only be
determined in some judicial proceeding instituted by the
United States. Insofar as the rights of the appellant rest
on the act of 1875, we will concede, for the purposes of this
appeal, that its claims under that act are well founded. We
cannot agree, however, that any form of judicial proceedings
is requisite or necessary to enforce the forfeiture declared by
the act of 1906. The nature of these grants and the manner
in which a forfeiture for breach of condition subsequent may
be declared and enforced have often been considered by the
supreme court of the United States.

In *Schulenberg v. Harriman*, 21 Wall. 44, 22 L. Ed. 551,
the court said:

"In what manner the reserved right of the grantor for
breach of the condition must be asserted so as to restore the

estate, depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be some legislative assertion of ownership of the property for breach of the condition, such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make any entry in person, and therefore, an office found was necessary to determine the estate; but, as said by this court in a late case [*United States v. Repentigny*, 5 Wall. 211] 'the mode of asserting or of resuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings."

In *United States v. Northern Pac. R. Co.*, 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836, the court said:

"In July, 1866, Congress granted unto the California and Oregon Railroad Company a right of way over the public lands. In a subsequent suit between the railroad company and one Bybee, a holder of a mining claim, it was claimed that the railroad company had forfeited and lost its right under the grant by its failure to complete its road within the time limited in the act; that such failure operated *ipso facto* as a termination of all right to acquire any further interest in any lands not then patented. But it was held by this court, in the words of Mr. Justice Brown: 'That in all cases in which the question has been passed upon by this court, the failure to complete the road within the time limited is treated as a condition subsequent, not operating *ipso facto* as a revocation of the grant, but as authorizing the government to take advantage of it and forfeit the grant by judicial proceedings, or by an act of Congress, resuming title to the land."

In *Atlantic & Pacific R. Co. v. Mingus*, 165 U. S. 413, 17 Sup. Ct. 348, 41 L. Ed. 770, the court said:

"But while we think the practice of forfeiting by legislative act is too well settled to be now disturbed, we do not wish

to be understood as saying that this power may be arbitrarily exercised, or that the grantee may not set up in defense any facts which he might lay before a jury in a judicial inquisition. It would comport neither with the dignity of the government nor with the constitutional rights of the grantee, to hold that the government by an arbitrary act might devest the latter of his title when there had been no breach of the conditions subsequent, or when the government itself had been manifestly in default in the performance of its stipulations. The inquiry in each case is a judicial one, whether there has been, upon either side, a failure to perform, and it makes but little practical difference whether such inquiry precedes or follows the re-entry or act of forfeiture."

In *Farnsworth v. Minnesota & Pac. R. Co.*, 92 U. S. 49, 23 L. Ed. 530, the court said:

"A forfeiture by the state of an interest in lands and connected franchises, granted for the construction of a public work, may be declared for non-compliance with the conditions annexed to their grant, or to their possession, when the forfeiture is provided by statute, without judicial proceedings to ascertain and determine the failure of the grantee to perform the conditions. Such mode of ascertainment and determination—that is, by judicial proceedings—is attended with many conveniences and advantages over any other mode, as it establishes as matter of record, importing verity against the grantee, the facts upon which the forfeiture depends and thus avoids uncertainty in titles, and consequent litigation. But that mode is not essential to the devestiture of the interest where the grant is for the accomplishment of an object in which the public is concerned, and is made by a law which expressly provides for the forfeiture when that object is not accomplished. Where land and franchises are thus held, any public assertion by legislative act of the ownership of the state, after default of the grantee—such as an act resuming control of them and appropriating them to particular uses, or granting them to others to carry out the original object,— will be equally effectual and operative. It was so decided in *United States v. Repentigny*, 5 Wall. 211, and in *Schulenberg v. Harriman*, 21 Wall. 44, with respect to real property held upon conditions subsequent." . . . "The only in-

convenience resulting from any mode other than by judicial proceedings is, that the forfeiture is thus left open to legal contestation, when the property is claimed under it, as in this case, against the original holders."

See, also, *Northern Pac. R. Co. v. Miller*, 20 Wash. 21, 54 Pac. 603.

From these decisions it appears manifest to us that the forfeiture declared by the act of 1906 is effective and complete, without other or further proceedings on the part of the government, and that the questions of fact upon which the forfeiture depends may be inquired into and determined in any judicial proceeding in which rights claimed under the original grant are involved. For these reasons the judgment of the court below is free from error and stands affirmed.

HADLEY, C. J., FULLERTON, ROOT, MOUNT, DUNBAR, and CROW, JJ., concur.