THE FAJARDO DEVELOPMENT COMPANY, PLAINTIFF AND RESPONDENT, *v.* ZALDUONDO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in expropriation proceedings.

No. 970.—Decided April 8, 1914.

BRIEF—STATEMENT OF CASE.—Pursuant to Rule 42 of this court, the brief of the appellant should contain a concise statement of the case without reciting the allegations of the pleadings or the documentary and oral evidence introduced by the parties.

EMINENT DOMAIN—RAILWAY—CHANGE OF PLAN—APPROVAL OF PLANS.—In accordance with the franchise granted the plaintiff corporation for the construction of a railway, the Commissioner of the Interior and the Executive Council are authorized to approve the plans of the original route of said railway and of any change therein, and the evidence introduced tends to show the necessity for the change at issue in this case.

ID.—EXTENSION OF TIME FOR CONSTRUCTION OF RAILWAY—INTERRUPTED TERM—FORFEITURE OF FRANCHISE.—In accordance with the terms of the extension of time granted by the Executive Council to the plaintiff corporation for the termination of the railway, it is unquestionable that the said period was interrupted by this case of condemnation proceedings, but even supposing that this could not be deduced from the terms of said extension, expropriation proceedings interrupt the period for the termination of the construction

of the railway and therefore the franchise cannot be held to have been forfeited on the ground that the construction was not terminated within the time fixed.

Franchise for Construction of Railway—Forfeiture of Franchise—Construction Finished After Time Fixed.—The forfeiture of a franchise for the construction of a railway because the work is not finished within the time fixed can be declared only by virtue of a judicial proceeding brought by the Government against the company and not in condemnation proceedings against the owner of a property on an allegation made by the latter.

Condemnation Proceedings—Offer to Indemnify—Complaint—Estoppel.— In accordance with the Act of March 12, 1908, providing for condemnation proceedings, the person who seeks the condemnation of a property must offer to its owner the amount which he is disposed to pay for the property and for the damages which may be caused, and this offer must be made after the declaration of public utility and be alleged in the complaint as an essential fact. In view of the special circumstances attending this case it was held that the defendant was estopped from pleading lack of consent to the condemnation of the property and the lack of an offer by the company to indemnify him.

Public Utility—Hearing for Franchise—Report of Franchise Committee.— A declaration of public utility is not void for the reason that the owner of the property was heard only by the Franchise Committee of the Executive Council and not by the whole Council, nor for the reason that the report was signed by the Franchise Committee only and not by a majority of the whole Executive Council.

The facts are stated in the opinion.

*Messrs. Armstrong & Keith* and *Luis Muñoz Morales* for the respondent.

*Messrs. Aponte & Aponte* for appellant.

Mr. Justice Wolf delivered the opinion of the court.

Rule 42 of this court provides that the brief of the appellant shall contain a true and concise statement of the case as it appeared in the record. This does not mean, as frequently happens, that the appellant should repeat the allegations of the pleadings and recite the documentary and oral evidence introduced by the parties. This true and concise statement should put the court in a position to know the particular errors complained of and not all the matters about which the parties have offered evidence and over the proof of which there is no dispute. In this case neither of the counsel has summarized the facts, but has contented himself

with reciting the pleadings and the evidence. We shall attempt to do what counsel have failed to do.

The complainant is a corporation organized under the laws of Connecticut. On November 1, 1905, the Governor of Porto Rico approved a franchise granted to said company by the Executive Council, and the said franchise was approved by the President of the United States on December 11, 1905, in accordance with the provisions of the Foraker Act. This franchise authorized the company to construct a railroad from Mameyes to Naguabo with a special branch to the shore at Fajardo. In the second clause of said franchise it was ordered that the company should be obliged to present to the Commissioner of the Interior, for the approval of the Executive Council, a correct route of the line of said railroad. The exact words of the franchise are:

"An accurate survey of the route of said railway shall be submitted by the grantee to the Commissioner of the Interior for the approval of the Executive Council within a reasonable time from that of the acceptance of this ordinance by the grantee, as hereinafter provided; and all plans for road-beds, tracks, side-tracks, culverts, bridges, and embankments and cuts for the general construction of the railway shall be submitted to the Commissioner of the Interior, and be approved by him before the work of construction shall proceed. The works already constructed by the grantee upon property acquired by it, or for its benefit, before the granting and acceptance of this ordinance, may be accepted and approved by the said Commissioner of the Interior."

It was also provided in the franchise that the corporation should be obliged to finish the whole construction of the road within three years after the acceptance by the company of the franchise, and such acceptance took place on December 12, 1905. An extension to this franchise was duly obtained in 1909 and another in 1910, both approved by the Governor as presented. The latter extension, by its terms, fixed the time for finishing the road for September 9, 1910. There was, however, a clause in the extension of 1909 which provided

that another reasonable extension might be granted by the Executive Council to allow the company to finish condemnation proceedings. September 9, 1910, passed by without the whole road being completed, but the Committee on Franchises of the Executive Council reported to such Council that it thought that the terms of the extension of 1909 were sufficiently broad to allow the Executive Council to extend a further time to the company to finish condemnation proceedings. There was nothing in the franchise of 1910 abrogating the power of the Executive Council to extend the time for condemnation proceedings, as provided in the extension of 1909, and the Executive Council accordingly gave the company more time.

In accordance with the original franchise the company presented its plan of the road to the Commissioner of the Interior and it was approved by him late in 1905. In attempting to build its road the company, by reason of curves and declivities and acting upon the advice of its experts, found it necessary to change a part of its route that lay between Ceiba and Naguabo and submitted a plan to that effect to the Commissioner of the Interior.

The map or plan itself, as changed, is not found in the record although it was introduced in evidence and certified to by the Commissioner of the Interior. There is a certificate of a memorial presented by the company to the Commissioner outlining the change, and this memorial was admitted in evidence. The evidence showed that the change of plan was approved by the Committee on Franchises of the Executive Council on August 4, 1910, of which committee the Commissioner was chairman; and the plan was also approved by the Executive Council.

The parcel of land which belongs to Miguel Zalduondo Veve, the appellant, is one of the pieces to be crossed by the said railroad, as shown in its amended plan, but said land did not appear in the original plan approved by the Commissioner of the Interior in 1905. After the company had de-

cided that a change of plan was necessary and had fixed its route, but before the plan had been approved by the authorities, the said company addressed itself to the owners over whose land it proposed to pass and explained to them where they proposed to pass and such owners did not oppose the same. Among such owners was the predecessor in title of the defendant, by name Vaamonde. The said Vaamonde likewise did not oppose the company's going over his land. The land was transferred to Zalduondo Veve on September 28, 1909. The memorial of the change of plan of the railroad branch is dated May 12, 1910.

On May 7, 1910, and hence before the change of route had been approved by the authorities, the respondent company wrote to Zalduondo offering him $100 per acre for his 23/100 acres of land and also $100 per acre as damages. In reply the said Zalduondo wrote the following letter to the company:

"Fajardo, May 10, 1910. To the Fajardo Development Co., Fajardo. Gentlemen: According to the letter dated the seventh of this month signed by your attorneys, Garvan and Armstrong, which I received yesterday, I am notified that, in accordance with the instructions of yourselves, if within ten days I have not accepted your propositions concerning a piece of land out of my lot at Ceiba they will initiate expropriation proceedings against me.

"This letter has surprised me beyond measure because you have reasons enough to be acquainted with me and to know that the writer is not a man to express two different minds about the same affair. My last word on this subject was uttered to your manager, Mr. Alvarez Torres, and to your attorney, Don Luis Muñoz Morales, some time ago.

"Furthermore, this company knows very well that I am not the man to yield under the pressure of a threat, but much to the contrary I am accustomed to combat them no matter what their source, preparing myself to answer them in due form.

"The essential object of my letter is to spare you the loss of time which you may be caused by the ten days which you give me before carrying into effect your threat and to tell you at the same time that you are in error in thinking that you can condemn my property, because condemnation proceedings only lie when the necessity exists of passing over the land and I shall prove to the last degree that you

are under no necessity of passing over my lot in question but that you have the deliberate intention of injuring me in my interests while thinking that a franchise is sufficient banner to protect such a pretense.

"The law stands above everything and as always I am determined to insure that you and all those who contract or have dealings with me shall be compelled to observe it.

"To the expropriation then, without loss of time, and let him prevail who is in the right."

At the trial the defendant objected to the admission of this correspondence on the ground that at the time the letters were written no declaration of public utility had been made.

The respondent company applied to the Executive Council for condemnation proceedings against the land of Zalduondo Veve. The latter was notified to appear before the Executive Council and was thence referred to the Committee on Franchises, where his objections were heard. On August 25, 1910, the Executive Council passed a declaration of public utility with respect to the land of Zalduondo Veve. On October 1, 1910, the present suit for condemnation of the land was begun. After the preliminary proceedings, issues joined, and after trial a judgment was rendered in favor of the complainant company, from which the defendant appealed and assigns four grounds of error:

(a) The first assignment of error is that the court committed error in not dismissing the complaint when it was shown that the land sought to be condemned was not included in the original map nor a copy of the amended map is to be found in the record. The memorial of the complainant company alluding to the changes is included in the statement, but the appellant has not pointed out the extent of the variation nor can we determine without expert aid or other proof to what the figures and words in that memorial refer. We shall have to presume that the memorial was duly approved by the Commissioner of the Interior and also that the changes were along the general line of the road, as the memorial itself indicates. The evidence tends to show that such changes were

necessary. The franchise originally provided that the plan should be submitted to the Commissioner of the Interior for the approval of the Executive Council and that "all plans for road-beds, tracks, * * * embankments and cuts for the general construction of the railway shall be submitted to the Commissioner of the Interior and be approved by him before the work of construction shall proceed." Even if the change of plan was a material one, appellant has submitted nothing to us which would show that the same authorities who, according to the franchise, approved the plan, could not consent and give validity to the variation. The persons who were to determine the route according to the franchise were not the Governor nor the President, but the Commissioner and the Executive Council. The latter were the necessary contracting parties on the one side with the company on the other. The terms of the contract may be changed by mutual consent. That the Commissioner did consent is a necessary presumption from the failure to include the map which would show such approval and from the apparent concession of the appellant of this fact in not objecting thereto and making no point thereon in this court.

The words quoted above from the franchise seem, furthermore, to give the Commissioner somewhat ample power. No injury to the public has been shown by reason of the plan having been finally determined in 1910 rather than in 1905.

(b) A second error is alleged inasmuch as the court did not decide that the franchise had been forfeited, and hence that the company had not the right to condemn. The principal ground for this contention is that the company failed to finish its work by September 9, 1910, as provided for in the extension granted in that year. It was the opinion of the Committee on Franchises of the Executive Council that the words contained in the extension of 1909, giving the Executive Council power to grant the company further time for condemnation proceedings, were sufficiently broad to suspend the completion of that part of the work which involved such

condemnation proceedings. We are of the same opinion. Any other interpretation would lead to the absurdity that an objecting landholder could defeat a franchise by refusing to yield his land. And we think that the same conclusion would follow even without specific mention of the power to extend set forth in the franchise of 1909.

We agree, moreover, with the respondent that the question of whether the corporation has forfeited a particular franchise can generally be only inquired into by the State in a proper proceeding begun for that purpose, citing Joyce on Franchises, 869, 875, and several California cases. The principle is that only the grantor, or his heirs, can avail himself of the breach of a condition subsequent with regard to an estate or a privilege granted. *Schulenberg* v. *Harriman,* 21 Wall., 44; *United States* v. *Northern Pacific Ry. Co.,* 177 U. S., 440; *Van Wyck* v. *Knevals,* 106 U. S., 369; *Atlantic and Pacific R. R. Co.* v. *Mingus,* 165 U. S., 433; *Kerfoot* v. *Farmers' and Merchants' Bank,* 218 U. S., 287. And that forfeiture must be judicially declared as against a railroad company failing to complete in time is further set forth in *Utah N. and C. R. Co.* v. *Utah and C. Ry. Co.,* 110 Fed., 889; *In the matter of New York Elevated R. R. Co.,* 17 N. Y., 337, 338; *Toledo and Ann Arbor R. R. Co.* v. *Johnson,* 49 Mich., 148, 151. The franchise is a contract between the parties and the validity thereof must be determined in a suit between the State and the parties unless otherwise provided by the franchise. *Thompson on Corporations,* paragraph 5337; *Riggs* v. *Cape Cod Ship Canal Co.,* 137 Mass., 71. And for similar reasoning see *Compañia Azucarera* v. *Registrar of Property,* 19 P. R. R., 147, and cases cited. The rule is the same where the franchise is granted in the state of domicil or in a foreign jurisdiction. *Bank of Augusta* v. *Earle,* 13 Pet., 599; *Spring Valley Water Works* v. *Schottler,* 62 Cal., 69, which case also shows the nature of a franchise.

(c) It is also alleged as error that the company failed to make an offer of payment to the defendant and appellant

after the declaration of public utility, as such offer would be required by the statute. Laws of 1908, p. 95. In reply to this contention the respondent urges, first, that this question was not raised in the court below. The complaint set up that the complainant was disposed to pay and offered to pay to the defendant the proper compensation for the land including the value of the same and the damages that the defendant might suffer by reason of the condemnation, and that the defendant had refused to accept the same. We must take these words as being an attempt to comply with the statute, as otherwise the complaint would not state a cause of action. In condemnation proceedings where an offer of payment to the owner is a necessary prerequisite to a successful condemnation, the offer must be alleged in the complaint. 15 Cyc., 635. The paragraph of the complaint reciting the offer aforesaid was specifically denied by the answer, and, as we have seen, the defendant objected to the admission of the correspondence which showed the offer, hence we must hold that the issue was duly raised in the court below. Respondent also urges that there is nothing in the statute which fixes a point of time when the offer must be made. The words are:

"Section 4.—Where a work has been declared of public utility and, for any reason, the owners of the property to be condemned refuse to consent to such condemnation as may be required, a cause of action shall thereby accrue to the person who is to perform said work, who may bring said action against the said owners. *  *  *"

We think the plain intent of the statute as quoted is that an offer must be made and that the time for making it must be after the declaration of public utility, the same paragraph providing that a copy of the declaration of public utility must be inserted in the complaint.

The respondent further maintains that the declaration of utility was made by the original franchise and hence there was no need for a further declaration before making the

offer required by the statute. The franchise in effect is a declaration of public utility, but whether it does away with the necessity of a further specific declaration of utility for a particular piece of property it is unnecessary for us to decide owing to the particular nature of the facts before us. The respondent made its offer to Zalduondo on May 7, 1910. At that time, it is true, only the original plan of the route was on file with the Commissioner, namely, the one approved by him in November, 1905. The change of plan to include the land of the defendant was filed on May 12, 1910, a few days later. Given, however, the fact of the lack of opposition on the part of the predecessor in title of the defendant, given the determined and hostile attitude of the defendant, we think the latter is estopped to raise the question of the lack of consent between him and the company. A large part of the letter might perhaps be taken as a mere assertion by the defendant of the lack of necessity to cross his land. But the concluding words are of a different character and could have easily led the company to believe that the defendant would oppose the condemnation at all hazards. The letter shows that the defendant and the company had had at least one other interview in which the same attitude had been maintained. Emphasis must be laid, too, on the previous notification and failure to object of Vaamonde.

(*d*) The fourth point made by appellant was that the declaration of public utility was void. He maintains that he was not duly heard before the Executive Council. He was cited to appear before the Executive Council, was by it referred to the Committee on Franchises, where he was duly heard. We know nothing against this legislative practice and we only inquire as to whether he had a due chance to be heard, and we think he had. There is nothing in the point that the report was not signed by a quorum of the Executive Council but only by five members. These five members were the entire Committee on Franchises and, we are sure, re-

ported to the Executive Council from which the declaration
of utility proceeded, and was valid.

The judgment must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices del Toro and Aldrey
concurred.