# UNITED STATES v. DENVER & R. G. W. R. CO. et al.

(District Court, D. Utah. December 22, 1924.)

No. 8061.

1. **Public lands** ⊂⊃92—**Attorney General held authorized to sue to enforce forfeiture of grant of right of way to railroad.**

Where the right to the forfeiture is clear, and is asserted in the public interest, an ordinary suit in equity may be brought by the Attorney General under his general authority to forfeit right of way over public lands acquired by railroad under Act March 3, 1875, § 4 (Comp. St. § 4924), for failure to complete section within five years after location, and for nonuser.

2. **Public lands** ⊂⊃92—**Public interest held not to require forfeiture of railroad right of way for failure to complete road and for nonuser.**

Public interest *held* not to require forfeiture of railroad right of way, acquired under Act March 3, 1875, § 4 (Comp. St. § 4924), for failure to complete section within five years after location, and for nonuser, in view of amounts expended and causes for delay.

3. **Public lands** ⊂⊃92—**Forfeiture of railroad right of way cannot be declared, unless right clear and in public interest.**

Court cannot declare forfeiture of railroad right of way, acquired under Act March 3, 1875, § 4 (Comp. St. § 4924), for failure to construct section within five years, or for nonuser, unless right to forfeiture is clear and is asserted in public interest.

In equity. Suit by the United States against the Denver & Rio Grande Western Railroad Company and others. Complaint dismissed.

S. W. Williams, Sp. Asst. Atty. Gen., and C. M. Morris, U. S. Atty., of Salt Lake City, Utah, for the United States.

Waldemar Van Cott, P. T. Farnsworth, Jr., B. R. Howell, and W. Q. Van Cott, all of Salt Lake City, Utah, for Denver & Rio Grande Western R. Co., New York Trust Co., and Bankers' Trust Co.

Henry McAllister and Elroy N. Clark, both of Denver, Colo., for receiver.

JOHNSON, District Judge. In June, 1902, the Castle Valley Railway Company filed in the land office at Salt Lake City, under the Act of March 3, 1875, an application for a right of way for a railroad over public lands of the United States situated in Salina Canyon, in this state, and extending up said canyon for a distance of 20 miles. In July following the Secretary of the Interior approved the application. The Castle Valley Railway Company constructed and completed a line of railroad over said right of way during the year 1903. After the railroad had been completed, but before trains had been operated over it for the purpose of carrying freight or passengers, it was, in the latter part of 1903, in large

measure washed away and destroyed by floods. The road has never been fully restored.

In 1908 the Denver & Rio Grande Railroad Company acquired title to all the property of the Castle Valley Railway Company, including the right of way above mentioned. In January, 1914, the Denver & Rio Grande Railroad Company filed in the land office at Salt Lake City, under said act of 1875, an application for a right of way for a railroad over public lands of the United States extending easterly a distance of 20 miles from the easterly end of the 20-mile section above mentioned. In November, 1915, the Secretary of the Interior approved the application. A railroad has never been constructed over any part of this right of way.

In 1921, the defendant, the Denver & Rio Grande Western Railroad Company, acquired title to all the property of the Denver & Rio Grande Railroad Company, including the rights of way above mentioned. The defendant Thomas H. Beacom is the receiver of the railroad properties of the defendant company, duly appointed by the United States court for the district of Colorado. The defendants Bankers' Trust Company and New York Trust Company are mortgagees, or named as trustees in mortgages, upon all the property of the defendant railroad company.

The United States has brought this action, and in the prayer of its complaint prays that a decree be entered in favor of plaintiff, "declaring the said grants forfeited to the United States, and enjoining the defendants from further occupying or using the said rights of way, and forever quieting and confirming in plaintiff the title to the said lands as against any claim or right, title, or interest in or to the same, or any part thereof, by virtue of said proceedings by said defendants, or any one claiming under them, and for such other and further relief as to the court may seem just and equitable."

Section 4 of the Act of March 3, 1875 (Comp. St. § 4924), under which the rights of way in question were acquired, provides:

"Any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

It is, I believe, the contention of government counsel that the United States is entitled as of right to the relief prayed for as to the 1915 right of way by virtue of the express provision of the statute "that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road," since a railroad has never been constructed over this section or any part of it.

As to the 1902 right of way, government counsel claim that, although the road was constructed in 1903, the fact that the same year after completion it was destroyed by floods and never restored "makes a clear case of nonuser of the land for the purpose for which it was granted, and that on account thereof the government is entitled to a forfeiture." In respect to these matters it is alleged in the complaint "that by reason of the nonuser of the railroad constructed on the right of way approved to the Castle Valley Railway Company in 1902, the said right of way has been forfeited to the United States, and by reason of the nonconstruction of any line of railroad on the right of way approved to the Denver & Rio Grande Railroad Company November 13, 1915, the said right of way has been forfeited to the United States."

[1] A preliminary question to be considered is in respect to the authority of the Attorney General to bring this suit. Defendants claim no such authority exists. In support of their contention counsel for defendants cite, among other authorities, the following: United States v. Repentigny, 5 Wall. 267, 18 L. Ed. 627; United States v. Northern Pacific Ry. Co., 177 U. S. 441, 20 S. Ct. 706, 44 L. Ed. 836; United States v. Tennessee & Coosa R. D. Co., 176 U. S. 242, 20 S. Ct. 370, 44 L. Ed. 452; Schulenberg v. Harriman, 21 Wall. 63, 22 L. Ed. 551; United States v. Washington Improvement & D. Co. (C. C.) 189 F. 674; Porto Rico Ry. Light & Power Co. v. United States, 249 F. 16, 161 C. C. A. 76. In answer to the contention of the defendants,

government counsel cite and rely upon Kern River Co. v. United States, 257 U. S. 147, 42 S. Ct. 60, 66 L. Ed. 175. It was upon the authority of this case that the motions of defendants to dismiss the complaint were heretofore overruled, but the question calls for further consideration upon the facts.

It cannot be claimed that this suit is a proceeding in the nature of office found; neither is it a statutory equivalent of such a proceeding. It is an ordinary suit in equity, to be determined upon equitable principles, one of which is as stated in the Kern River Case: "* * * Where * * * the right to the forfeiture is clear, and is asserted in the public interest, equitable relief, if otherwise appropriate, is not withheld." And as also stated in the opinion: "In the absence of some legislative direction to the contrary, and there is none, the general authority of the Attorney General in respect of the pleas of the United States and the litigation which is necessary to establish and safeguard its rights, affords ample warrant for the institution and prosecution by him of a suit such as this. * * * A suit brought in virtue of that authority, and otherwise appropriate to the occasion, is authorized by law. * * *" It seems to me the present suit is one brought in virtue of that authority, appropriate to the occasion, and authorized by law.

[2] The question upon the merits is whether the right of the United States to the forfeiture of these rights of way, or either of them, is clear, and is asserted in the public interest. The answer to this question calls for a consideration of the evidence in the case.

It appears from the record, as stipulated or as proven by evidence introduced, that prior to the year 1903 large and valuable deposits of coal were known to exist in the vicinity of the lands included within the first right of way. At that time the development of the coal measures of the state to meet the existing demand for Utah coal within this state and other Western states depended upon railroad transportation facilities and the time within which such facilities could be made available. The 20 miles of railroad constructed by the Castle Valley Railway Company over the right of way granted to it was constructed for the purpose of furnishing transportation facilities for the coal measures situated in the vicinity of the road. It was supposed that the coal measures would be immediately opened up, thereby insuring a satisfactory return upon the investment. The Castle Valley Com-

pany, however, was financially unable to immediately restore the railroad. It was not long before the development and exploitation of coal measures in other parts of Southern Utah which were served by other railroad lines were such as to adequately supply the existing demands of the coal market. On this account, and probably also on account of financial stress, the Castle Valley Railway Company and its successor, the Denver & Rio Grande Railroad Company, took no steps toward the restoration of the railroad until in the month of December, 1913, when the Denver Company, which had acquired the rights of way in 1908, began work of restoration.

As already stated, this company in January, 1914, filed an application for the second right of way which was granted in November, 1915. During the period between December, 1913, and November, 1914, reconstruction work upon the first right of way was done at an expense of about $35,-000. On account of business conditions resulting from the World War, which had commenced in August, the company discontinued reconstruction work in November, 1914. On December 28, 1917, the government of the United States took possession and control of the railroads of the country, including the railroad of the Denver & Rio Grande Railroad Company. During the period of government control and operation the United States did nothing toward the reconstruction or building of a railroad upon these rights of way, or either of them. In January, 1918, the District Court of the United States for the District of Colorado appointed a receiver of the properties of the Denver & Rio Grande Railroad Company, which receivership continued until July, 1921.

Upon the surrender of the properties of this company by the United States on March 1, 1920, they were turned over to such receiver. In August, 1921, all the properties of the Denver & Rio Grande Railroad Company were by order of said court sold and conveyed by the receiver to the defendant Denver & Rio Grande Western Railroad Company. In July, 1922, the District Court for the District of Colorado appointed a receiver of the properties of the defendant railroad company, which receivership, at the time of the trial, still continued, the defendant Thomas H. Beacom being the receiver of said defendant company. Between March, 1920, and September, 1923, there was expended in reconstructing the line of railroad located upon the first right of way

the sum of about $142,000. Of this sum about $26,000 was expended by the receiver of the Denver & Rio Grande Railroad Company, pursuant to orders of the United States District Court for the District of Colorado, about $60,000 by the defendant Denver & Rio Grande Western Railroad Company during the time it was operating the properties between August, 1921, and August, 1922, and about $56,000 between August, 1922, and September, 1923, by the receiver of the defendant railroad company, pursuant to the orders of the United States District Court of the District of Colorado.

The Secretary of the Interior, presumably knowing the facts, in the exercise of a sound discretion, in November, 1915, approved the application for the second right of way to the Denver & Rio Grande Railroad Company. In view of this action of the Secretary of the Interior, I do not think, in determining whether a forfeiture should be declared at this time, that any great weight should be attached to the fact that no use was made of the first right of way during the period from 1903 to December, 1913.

The beginning of the World War in August, 1914, dislocated business the world over, and the reasons for the discontinuance of the work upon the projected railroad over these rights of way in the fall of that year, and the failure to resume construction prior to December 28, 1917, are so well understood and so generally appreciated that they need not be restated here. In December, 1917, as already stated, the government took over the properties of the Denver & Rio Grande Railroad Company, with the other railroads of the country, and operated them until March 1, 1920. During this period the government took no steps toward the reconstruction or building of this projected coal road, for reasons which are obvious. It was during this period that the receiver of the properties of the Denver & Rio Grande Railroad Company was appointed by the District Court of the District of Colorado, to whom the properties of that company were surrendered by the government on March 1, 1920.

The receiver operated the properties of the company under the direction of the court until sold to the defendant company in 1921, as already stated. The new company operated the properties purchased until the appointment of the present receiver by that court in July, 1922. As already stated, the court having charge of the operation of the properties of which these rights of way form a part, during the first receivership authorized the expenditure of about $26,000, and during the second receivership of about $56,000, in the restoration of the railroad upon the first right of way. Surely this court may not indirectly review and condemn the action of that court, because it did not authorize and direct the complete restoration of the railroad on the first right of way and the complete construction of a railroad upon the second right of way. This court is unacquainted with the financial difficulties accompanying these receiverships. It must assume that court has acted in good faith and with sound discretion. That court by authorizing the expenditures which were actually made in reconstruction work manifested a clear intent to retain and ultimately to make use of this right of way for railroad purposes.

There is nothing in the record to show that there is any other company desiring to build a railroad through Salina Canyon; but, even if there is such a company, it appears that the canyon is wide enough for a right of way for such company without interference with the right of way in question, except at crossing points. It is said that the government forest service and residents generally in the neighborhood of Salina Canyon would, upon forfeiture being declared by this court, appropriate the railroad grade for a public highway through the canyon. There may be need of a highway up Salina Canyon for the use of the forest service and of the community in that neighborhood; but there is ample room for such a highway outside the limits of the right of way, except at necessary crossing points. Besides, it appears from the evidence introduced that the forest service is now using the grade as a right of way under arrangements heretofore made with the receiver. In view of the facts, there does not appear to be any real public interest which requires the forfeiture of this right of way. Under the circumstances, it seems to me that it would be unjust and a sheer act of confiscation for this court to declare the right of way forfeited, so as to permit the appropriation of this unfinished railroad grade as a public highway.

[3] There is no suggestion that any public interest whatever would be even remotely served or promoted by the forfeiture of the second right of way. The only basis for a declaration of forfeiture of this right of way is the provision of the statute above quoted. The legislative branch of the government, which granted this right of way indirectly as provided in the statute, and

fixed the time limit for the construction of the railroad over the right of way, may at its pleasure declare a forfeiture, now that the time limit has expired. It has full authority in the premises. It has not directed or authorized this court as a judicial tribunal to declare the forfeiture after the expiration of the time limit. Without such authorization, this court, under the authorities heretofore cited, is without authority to declare the forfeiture, except where, in the exercise of its equitable powers, the right to the forfeiture is clear, and is asserted in the public interest.

As no substantial public interest requires the forfeiture of these rights of way, it is not clear in my judgment that the relief asked should be granted.

In view of this conclusion, a judgment will be entered dismissing the complaint.